RAKOWSKI v SARB

Docket No. 261255. Submitted August 9, 2005, at Detroit. Decided
February 7, 2006, at 9:00 a.m.

Marjorie L. and Anthony Rakowski brought a personal injury
action in the Wayne Circuit Court against Michael Sarb after
Ms. Rakowski was injured when the railing on a ramp at her
parents' home gave way. The defendant was a municipal build-
ing inspector who had inspected the railing after construction.
The defendant moved for summary disposition, arguing that he
did not owe Ms. Rakowski a common-law duty, that his conduct
did not proximately cause her injury, and that he was entitled to
governmental immunity because he was not grossly negligent.
The court, Louis F. Simmons, Jr., J., granted the defendant's
motion, concluding that the defendant was a city employee and
was immune from liability because the plaintiffs could not
establish that he was grossly negligent. Following reassignment
to another judge, the court, Robert J. Colombo, Jr., J., granted
reconsideration. The court subsequently denied the defendant's
second summary disposition motion, concluding that a question
of fact existed regarding whether the defendant was a city
employee, that the defendant owed a common-law duty to Ms.
Rakowski, and that a question of fact also existed regarding
whether the defendant's conduct was the proximate cause of her
injuries. The court also determined that no reasonable juror
could find that the defendant was grossly negligent and that the
defendant would be entitled to summary disposition on govern-
mental immunity grounds if the jury were to find that he was a
city employee. The defendant appealed.

The Court of Appeals held:

1. The trial court incorrectly concluded that the jury must
decide whether the defendant was a city employee for purposes of
governmental immunity under MCL 691.1407(2). Under both the
economic-realities test and the plain and ordinary meaning of the
term "employee," the defendant was an employee of the city. He
was paid wages and benefits and worked a regular, full-time
schedule. The city evaluated the defendant's performance, con-

trolled his duties and the manner in which he performed his job, and had the right to fire him without cause.

2. The trial court erred by denying the defendant's summary disposition motion. The common-law public duty doctrine does not protect all governmental employees from liability for failure to perform, or the inadequate performance of, a duty owed to the public. MCL 691.1407, however, does not create a cause of action. In a case such as this, in which no duty is created by statute or ordinance, the plaintiff must first establish that a defendant who is a governmental employee owed a common-law duty to the plaintiff under traditional tort principles. To determine whether to impose a common-law duty, a court considers (1) the parties' relationship, (2) the foreseeability of the harm, (3) the degree of certainty of injury, (4) the closeness of the connection between the conduct and the injury, (5) the moral blame attached to the conduct, (6) the policy of preventing future harm, and (7) the burdens and consequences of imposing a duty and the resulting liability for a breach. Application of these factors in this case leads to the conclusion that the defendant owed no duty to Ms. Rakowski. They had no relationship, and the defendant's role was limited to a visual inspection of the railing. He had no role in the construction and did not conduct the inspection on the city's behalf as a warranty to the homeowner. The risk of harm from the defective railing arose directly and most substantially from its construction, a matter that was squarely within the responsibility and control of the builder and the homeowner.

3. The trial court did not err when it held that no reasonable juror could conclude that the defendant was grossly negligent. The evidence establishes, at best, only ordinary negligence, not conduct so reckless that it demonstrates a substantial lack of concern for whether an injury results, which is the definition of "gross negligence" for purposes of the governmental immunity statute.

4. The trial court did err, however, when it concluded that the defendant's conduct proximately caused Ms. Rakowski's injury. To be the proximate cause of an injury, the alleged gross negligence must be the one most immediate, efficient, and direct cause of the injury. A fall resulting from a loose railing caused Ms. Rakowski's injury. The defendant's conduct six months before could not be the proximate cause under this definition, regardless of whether he correctly approved the ramp during his inspection.

Reversed.

GOVERNMENTAL IMMUNITY — EMPLOYEES — NEGLIGENCE — COMMON-LAW DUTY —
    BUILDING INSPECTORS.

A municipal building inspector who performs only a visual
    inspection of a structure does not owe a common-law duty to a
    homeowner's invitee who is injured as the result of a defect in
    the quality or sufficiency of the structure's construction, which
    construction was a matter squarely within the knowledge and
    control of the builder and the homeowner (MCL 691.1407[2]).

*Donald M. Fulkerson, Bret A. Schnitzer,* and *Michael
T. Materna,* for the plaintiffs.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *Jo-
seph Nimako* and *Karie Holder Boylan*), for the defen-
dant.

Before: SAAD, P.J., and HOEKSTRA and MARKEY, JJ.

SAAD, P.J.

### I. NATURE OF THE CASE

Plaintiffs' personal injury claim against defendant
raises an issue of first impression under Michigan law:
Whether a municipal building inspector owes a duty of
care under common-law negligence to protect a home-
owner's invitee from personal injury sustained by the
invitee because of an allegedly defective structure in-
spected and approved by the building inspector. Neither
state statute nor the building code adopted by the city
imposes such a duty on a building inspector. Further,
our application of the factors historically used to deter-
mine whether a common-law duty exists compels the
conclusion that the municipal building inspector,
Michael Sarb, did not owe a duty to plaintiff Marjorie L.
Rakowski. Because Ms. Rakowski failed to establish
that Mr. Sarb owed a duty under Michigan negligence
law, the trial court should have granted summary
disposition to Mr. Sarb.

## II. FACTS AND PROCEDURAL HISTORY

On May 10, 2001, Ms. Rakowski sustained injuries when the railing gave way on a ramp for the handicapped at the home of her parents, Arthur and Virginia Kalis. The record reflects that Ms. Rakowski's father, Arthur Kalis, applied for the building permit for the ramp from the city of Dearborn Heights and that the city issued the permit on August 13, 1999. Contrary to a statement in the permit application that Arthur Kalis would construct the ramp, Kalis hired Len Cytacki, doing business as Alenda Carpentry, to build the ramp in August 1999. However, before Cytacki completed the handrail, Cytacki was fired or quit the job. According to Cytacki, before he left the Kalis home, he informed someone at the house that the railing was incomplete and was told that someone else would finish it.

Arthur Kalis died on February 17, 2000, and no evidence shows that the Kalises performed any additional work to complete the ramp. Indeed, several months before the accident, Ms. Rakowski's brother-in-law, Charles Carrig, offered to reinforce the railing with additional screws because he saw that it was bowing and insecure, but Ms. Rakowski told him that her husband would reinforce the railing.

Documents show that defendant, Mr. Sarb, a Dearborn Heights building inspector, conducted an inspection of the ramp and other building projects at the Kalis house on October 20, 2000. Though he had no independent recollection of the inspection, Mr. Sarb acknowledged that he initialed and wrote "okay" on the final inspection form for the ramp. According to Mr. Sarb and another building official, Claudette Whitehead, Dearborn Heights inspectors conduct only visual inspections to determine whether structures meet local building code requirements. It is undisputed that Dearborn

Heights building inspectors do not conduct "destructive" testing or stress tests to determine whether structures meet weight bearing requirements.

On November 20, 2001, Ms. Rakowski filed a complaint against her mother (Virginia Kalis) and her father's estate, and she later added Cytacki as a defendant. Ms. Rakowski alleged that her parents and Cytacki negligently built and maintained the ramp and railing. Ms. Rakowski further claimed that her parents warranted that the ramp was safe, despite their knowledge of the defective or incomplete railing. On April 28, 2003, Ms. Rakowski received an arbitration award of $220,000, which was paid by her mother, her father's estate, and Cytacki. In the same month, Ms. Rakowski filed this action against Mr. Sarb, asserting that he was negligent, or grossly negligent, when he conducted the inspection of the handicap ramp. According to Ms. Rakowski, Mr. Sarb breached a duty to ensure that the railing complied with construction standards and the Building Officials and Code Administrators National Building Code (the BOCA code). Also, Ms. Rakowski later alleged that Mr. Sarb should be estopped from denying that he was an independent contractor, rather than an employee of Dearborn Heights, so that he is not entitled to immunity under the governmental tort liability act, MCL 691.1401 *et seq*.

In April 2004, defendant moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Defendant argued that he did not owe Ms. Rakowski a common-law duty and that his conduct did not proximately cause Ms. Rakowski's alleged injury. He further claimed that he is entitled to immunity under MCL 691.1407 because he was not grossly negligent and his conduct was not *the* proximate cause of Ms. Rakowski's injuries. Judge Louis F. Simmons, Jr., granted defen-

dant's motion under MCR 2.116(C)(7) and (10) on July 19, 2004, and held that defendant was an employee of Dearborn Heights and that he is immune from suit because Ms. Rakowski could not establish that he was grossly negligent.

Thereafter, the case was reassigned to Judge Robert J. Colombo, Jr., and Judge Colombo granted Ms. Rakowski's motion for reconsideration of Judge Simmons's decision. Defendant later filed a second motion for summary disposition and again argued that (1) he did not owe Ms. Rakowski a common-law duty that supported a claim for negligence, (2) any alleged breach of duty was not the proximate cause of Ms. Rakowski's injury, (3) he was an employee of the city of Dearborn Heights and, therefore, entitled to governmental immunity, and (4) he was not grossly negligent. Judge Colombo denied defendant's second motion for summary disposition and ruled that there is a question of fact whether defendant was an employee of the city of Dearborn Heights, that defendant owed a common-law duty to Ms. Rakowski, and that there is a question of fact whether defendant's conduct was the proximate cause of Ms. Rakowski's injuries. However, Judge Colombo also held that no reasonable juror could find that defendant was grossly negligent and that defendant would be entitled to summary disposition on governmental immunity grounds if the jury were to find that he was an employee of the city of Dearborn Heights.

### III. ANALYSIS

#### A. EMPLOYMENT STATUS

As a preliminary matter, the trial court incorrectly concluded that the jury must decide whether Mr. Sarb was an employee of the city of Dearborn Heights for

purposes of the governmental tort liability act. The relevant statute, MCL 691.1407(2), grants immunity to governmental officers and employees acting on behalf of a governmental agency engaged in the exercise or discharge of a governmental function, provided the officer's or employee's conduct does not amount to gross negligence that is the proximate cause of an injury or damage.

The trial court used the economic-realities test to determine Mr. Sarb's employment status, but concluded that there remained a question of fact regarding whether Mr. Sarb was an employee or an independent contractor when he worked as a building inspector for Dearborn Heights. As this Court explained in *Mantei v Michigan Pub School Employees Retirement Sys & Michigan Pub School Employees Retirement Bd,* 256 Mich App 64, 78-79; 663 NW2d 486 (2003):

> The economic-reality test considers four basic factors: (1) control of a worker's duties, (2) payment of wages, (3) right to hire, fire, and discipline, and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Clark v United Technologies Automotive, Inc,* 459 Mich 681, 688; 594 NW2d 447 (1999); *Chilingirian [v City of Fraser,* 194 Mich App 65, 69; 486 NW2d 347 (1992)]; *Parham v Preferred Risk Mut Ins Co,* 124 Mich App 618, 624; 335 NW2d 106 (1983). This test considers the totality of the circumstances surrounding the work performed. *Chilingirian, supra* at 69. No single factor is controlling and, indeed, the list of factors is nonexclusive and other factors may be considered as each individual case requires. *Clark, supra* at 689. Thus, the element of control, "although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees." *McKissic v Bodine,* 42 Mich App 203, 208; 201 NW2d 333 (1972).

Weight should be given to those factors that most favorably effectuate the objectives of the statute in question. *Id.* at 209.

"Employee" is not defined in MCL 691.1407(2), and our case law provides that, if statutory terms are undefined, they "must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions." *Halloran v Bhan,* 470 Mich 572, 578; 683 NW2d 129 (2004). The *Random House Webster's College Dictionary* (1992), defines "employee" as "a person who has been hired to work for another."

Under either the "plain and ordinary meaning" analysis or the economic-realities test, there is no genuine issue of material fact that defendant was an employee for purposes of MCL 691.1407(2). The undisputed facts demonstrate that defendant was hired to work for the city of Dearborn Heights as a building inspector and, therefore, was an "employee" under the plain and ordinary meaning of that term as used in MCL 691.1407(2).[1] Furthermore, aside from the payment of wages and benefits, defendant was treated as an employee of the city, not as an independent contractor. Defendant worked a regular, full-time schedule of 40 hours a week, and the city controlled his day-to-day duties, the manner in which he performed his job, and when he completed his tasks. The city also retained the right to fire defendant without cause and generally evaluated his performance during the time he worked for the city. Defendant's work was also an integral part

---

[1] Defendant would also qualify as an "officer" for purposes of MCL 691.1407(2). At his deposition, defendant testified that his title was that of "building official" or "code official," and that he was hired to perform building inspections. According to defendant, his identification badge identified him as a "building official," and his job was to identify violations of the building code for the city.

of accomplishing the city's goals.[2] Accordingly, under either standard, defendant qualified as an employee protected by MCL 691.1407(2).

### B. DUTY

#### 1. APPLICABLE LAW

In *Beaudrie v Henderson*, 465 Mich 124, 134; 631 NW2d 308 (2001), our Supreme Court declined to extend the public duty doctrine to protect all governmental employees from liability for the failure to perform or the inadequate performance of a duty owed to the public. The Court recognized that the grant of such broad, common-law immunity to all governmental employees would be inconsistent with the governmental tort liability act, which subjects governmental employees to liability for grossly negligent conduct that was the proximate cause of a plaintiff's injuries. *Id.* at 134, 139.

Importantly, however, the Court in *Beaudrie* made clear that MCL 691.1407 "does not *create* a cause of action" and that a plaintiff must first establish that the governmental employee defendant owed a common-law duty to the plaintiff. *Beaudrie, supra* at 139 n 12 (emphasis in original).[3] We are further guided by the *Beaudrie* Court's reminder that "[t]he liability of gov-

---

[2] We find no merit to plaintiffs' argument that defendant is estopped from denying that he was an independent contractor in light of his deposition testimony. Considered in context, defendant stated that he considered himself an independent contractor because of the way he was paid. As previously discussed, however, the economic-realities test and the dictionary definition of "employee" involve additional considerations. Consequently, defendant's qualified statement at his deposition is not dispositive of his status as an employee or independent contractor for purposes of MCL 691.1407(2).

[3] As the *Beaudrie* Court fully stated:

ernment employees, other than those who have alleg-
edly failed to provide police protection, should be deter-
mined using traditional tort principles without regard
to the defendant's status as a government employee."
*Id.* at 134.[4]

---

However, we reject Justice LEVIN's suggestion in *White [v
Beasley,* 453 Mich 308, 355; 552 NW2d 1 (1996)], that MCL
691.1407 "defines the duty pursuant to which a governmental
employee is subject to liability." The statute does not *create* a cause
of action. Plaintiffs are still required to establish a common-law
duty. [*Id.*]

---

[4] We recognize that, in addition to a duty established under common
law, a duty may also be expressly created by statute. *Walker v City of
Flint,* 213 Mich App 18, 22; 539 NW2d 535 (1995). Here, no such duty
exists, and plaintiffs appear to concede this point. Dearborn Heights
hired defendant to assist the building inspector to carry out the duties
imposed by the Single State Construction Code Act, MCL 125.1501 *et
seq.,* but nothing in that act gives rise to a civil duty to a private third
party. Further, the purpose of the construction code act is not to protect
the public against harm by establishing construction standards and an
inspection regime, but merely to establish the authority of the director of
the Department of Consumer and Industry Services, now the Depart-
ment of Labor and Economic Growth, to "prepare and promulgate" a
state construction code consistent with, and protective of, the "health,
safety, and welfare of the occupants and users of buildings and struc-
tures." MCL 125.1504(1) and (3)(c). Though the act sets forth certain
criminal penalties for an "agent charged with the responsibility of issuing
permits or inspecting buildings or structures" who "knowingly" violates
the act or a code, or who "knowingly" makes a false or misleading
statement in a report, MCL 125.1523(1), knowledge does not equate with
gross negligence and recklessness, and the act is simply not relevant to
decide whether an inspector owes a legal duty in negligence actions. See
*Klanseck v Anderson Sales & Service, Inc,* 426 Mich 78, 86; 393 NW2d
356 (1986). Accordingly, we hold that the construction code act is not
intended to protect against negligent inspections. See *id.* at 86-87.

Further, in adopting the BOCA code, Dearborn Heights did not create
a duty owed by its building inspectors to third-party invitees. "[B]efore
the violation of an ordinance, rule, or regulation may be considered as
bearing on the question of negligence, the court must determine that the
purpose of the ordinance was to prevent the type of injury and harm
suffered." *Johnson v Bobbie's Party Store,* 189 Mich App 652, 661; 473

In common-law negligence cases, a duty is " 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Antcliff v State Employees Credit Union*, 414 Mich 624, 630-31; 327 NW2d 814 (1982), quoting Prosser, Torts (4th ed), § 53, p 324; see Prosser & Keaton, Torts (5th ed), § 53, p 356. More specifically, a duty "concerns whether a defendant is under *any* legal obligation to act for the benefit of the plaintiff." *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86 n 4; 679 NW2d 689 (2004) (emphasis in original).

When a court determines whether to impose a common-law duty, it considers (1) the relationship of the parties, (2) the "foreseeability of the harm, [(3) the] degree of certainty of injury, [(4) the] closeness of connection between the conduct and injury, [(5) the] moral blame attached to the conduct, [(6) the] policy of preventing future harm, and, [(7)] finally, the burdens and consequences of imposing a duty and the resulting liability for breach." *Buczkowski v McKay*, 441 Mich 96, 101 n 4; 490 NW2d 330 (1992), citing Prosser & Keeton, § 53, p 359 n 24; *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004). The inquiry is " 'ultimately a question of fairness' " involving a " 'weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.' " *Samson*

---

NW2d 796 (1991). In general, "tort liability should not be based on statutes and ordinances that are not traditionally relied on to impose liability or do not themselves specifically expose government employees to liability." *White, supra*, at 318. The BOCA code nowhere specifically exposes municipal building inspectors to liability. Indeed, the BOCA code specifically provides for relief from personal responsibility for any code official, or subordinate, as long as the official or subordinate acts in "good faith and without malice . . . ." 1993 Building Officials and Code Administrators National Building Code, § 104.6. Further, no other Dearborn Heights ordinance establishes a duty of reasonable care on municipal inspectors.

*v Saginaw Professional Bldg, Inc,* 393 Mich 393, 420; 224 NW2d 843 (1975) (LEVIN, J., dissenting) (citation omitted), cited with approval in *Buczkowski, supra* at 101 n 5.

## 2. APPLICATION OF THE LAW

Ms. Rakowski alleges that defendant negligently approved the ramp even though (1) the ramp's railings did not have the vertical balusters that are required for structures standing more than 30 inches above the ground and (2) the handrail was secured with nails of inadequate length when longer nails or screws should have been used. It is undisputed that Ms. Rakowski and Mr. Sarb had no direct or indirect relationship. Ms. Rakowski was merely an invitee on the day of the accident, which occurred more than six months after Mr. Sarb's inspection, and she neither owned nor lived in the house at which the ramp was built. Further, Ms. Rakowski admitted at her deposition that she and Mr. Sarb never met or talked, that she was not present when Mr. Sarb conducted his inspection, and that she never talked to a building department representative about the ramp. Mr. Sarb's role in conducting the inspection was also limited by the city to a visual assessment of the structure; he played no role in the construction of the ramp, nor did he monitor or supervise the building process.

Moreover, with regard to the relationship of the parties, an invitee of a homeowner would not reasonably expect or rely on a municipal building inspector to protect the invitee from personal injuries that occur because of substandard workmanship. The relationship is simply too attenuated, and an invitee would more logically rely on the owner of the premises, the builder, or, in some circumstances, the manufacturer of the

allegedly defective material to ensure suitable quality of workmanship and safety. Certainly, nothing in this record suggests any relationship or contact between the parties that would favor the imposition of a duty on Mr. Sarb for the benefit of Ms. Rakowski.

Regarding the foreseeability of an injury to a third party, as our Supreme Court explained in *Samson, supra* at 406,

> the mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly. . . . [T]o require the actor to act, some sort of relationship must exist between the actor and the other party which the law or society views as sufficiently strong . . . .

Thus, though Mr. Sarb could arguably foresee that a third party might lean against the railing of the structure, our inquiry necessarily takes into account Mr. Sarb's limited role in the sequence of events at issue, his minimal responsibility for the condition, and his limited control over the risk of harm. Further, when evaluating the comparably limited role of the municipal building inspector and the more pervasive role of the owner or contractor, we must determine whether it is prudent to conclude that the building inspector must foresee this type of injury to an invitee caused by this defect.

Mr. Sarb did not conduct the inspection on behalf of Dearborn Heights as a warranty to the homeowner. Rather, Mr. Sarb performed the limited function of visually assessing the ramp for code compliance.[5] Accordingly, Mr. Sarb did not perform destructive testing to evaluate the style or length of the fasteners used to

---

[5] Indeed, testimony established that the person who obtains the construction permit assumes, in writing, the responsibility to ensure that the structure is built in a workmanlike manner.

secure the railing and he did not conduct stress tests to determine the weight-bearing capacity of the railing.

It is undisputed that Ms. Rakowski's injury occurred because the handrail was nonsecure. Clearly, therefore, the foreseeability of harm has a closer nexus to the construction of the ramp than to the limited, visual inspection conducted by Mr. Sarb. The quality or sufficiency of the construction was a matter within the knowledge and control of the builder and the homeowner. Whether Mr. Cytacki, the builder, failed to properly construct the ramp or the homeowner, despite assurances given to Mr. Cytacki, failed to complete the structure in 1999, the risk that an injury would occur because of faulty construction stemmed directly from and is more closely related to the action or inaction of the builder or homeowner than to the conduct of Mr. Sarb. Indeed, unlike Mr. Sarb, the builder, the homeowner, and *Ms. Rakowski* knew, at the time construction stopped in 1999, that the railing was incomplete.[6] Again, Mr. Sarb played no role in choosing the building materials for the structure or in assembling the ramp. Thus, for purposes of determining whether to impose a duty on a municipal building inspector under these facts, it was not foreseeable that any conduct by Mr. Sarb would result in Ms. Rakowski's accident six months after the inspection, or that Ms. Rakowski, a third-party invitee, would rely on Mr. Sarb's conduct in light of her specific knowledge regarding the construction of the railing and assurances she said she received from her parents.

Similar considerations compel the conclusion that there is, at best, a tenuous relationship between Mr.

---

[6] Thus, we are not persuaded that any "moral blame" may be fairly attached to *Mr. Sarb*'s conduct under these circumstances. See *Buczkowski, supra* at 101 n 4.

Sarb's conduct and Ms. Rakowski's injury. The "degree of certainty" of injury here is directly related to the builder's work product or the homeowner's failure to complete or maintain the structure. See *Buczkowski, supra* at 101 n 4. Again, the municipal building inspector's role is so limited and so directed to minimal building code enforcement, for the benefit of the entire community, that there is a minimal causal nexus to justify the imposition of a duty. Moreover, the specific conduct of a municipal building inspector is passive, not active, and there is very little, if any, moral blame that attaches to the building inspector's conduct because of the inspector's limited job function.

Moreover, because the primary risk of harm arose directly and most substantially from the construction of the ramp, a matter squarely within the responsibility and control of the builder and homeowner, policy considerations favor a finding that Mr. Sarb owed no duty to Ms. Rakowski. The record reflects that, as a Dearborn Heights building inspector, Mr. Sarb conducted 30 inspections a day, and city procedures restricted his inspections to a visual assessment of the structure. Given his limited role, on behalf of and for the benefit of the city, it would be unduly burdensome to place a duty on Mr. Sarb to discover all flaws in workmanship and wholly impractical to require that a municipal building inspector warrant that each project is free from construction defects.

Further, the "burdens and consequences" do not favor the imposition of a duty and, thus, potential liability on Mr. Sarb. See *id.* In light of the narrow purpose and nature of the typical municipal building inspection, it is simply unreasonable for Ms. Rakowski to cite defendant's inspection as a warranty of the safety of the ramp or the cause of her injury. Rather, the

capacity and ability to prevent injuries caused by inadequate or incomplete construction projects lies with the builder and homeowner, and it is, therefore, not Mr. Sarb's duty to do so.[7]

Moreover, because individual governmental employees like Mr. Sarb can least afford the imposition of litigation costs and large damage awards in personal injury cases, the imposition of a duty on municipal building inspectors would be unfair and ineffectual. To expose a municipal building inspector to such liability would also engender numerous adverse consequences for our local communities. Municipalities may decline to employ building inspectors or may insist on a waiver of liability to avoid exposure for personal injuries occurring on residential premises. Further, municipalities that choose to defend and indemnify inspectors would then bear the cost of damage awards, which would undoubtedly be passed on to residents in the form of increased taxes, prohibitively high permit fees, or, perhaps, further delays in obtaining numerous necessary approvals from municipal inspectors. Indeed, litigation costs and the cost to comply with a duty to warrant the safety and workmanship of all construction projects might very well result in a municipality's decision to discontinue building inspections altogether.[8]

---

[7] Nothing in the record suggests that Mr. Sarb, as a city inspector, undertook a duty owed to Ms. Rakowski by either the builder or homeowner.

[8] See *Wilson v Municipality of Anchorage*, 669 P2d 569, 573 (Alas, 1983) (second ellipsis added), quoting *Adams v State*, 555 P2d 235, 248 (Alas, 1976) (Connor, J, dissenting):

"To assure total compliance [with fire, health and safety laws] would require an enormous expenditure of time and money by the government . . . .

For these reasons, and because the inspection statute and ordinance at issue do not impose a duty on Mr. Sarb, the trial court erred when it denied Mr. Sarb's motion for summary disposition on this issue.

### C. GROSS NEGLIGENCE AND PROXIMATE CAUSE

Though we need not decide the issue, in her cross-appeal Ms. Rakowski erroneously argues that the trial court also erred when it ruled that no reasonable juror could conclude that Mr. Sarb was grossly negligent.[9] Again, Ms. Rakowski alleged that the ramp's railing failed to support her weight because it was constructed with short nails, rather than screws, and because balusters were not properly placed to reinforce the handrail, which stood more than 30 inches above the ground. Accordingly, the conduct for which Ms. Rakowski seeks damages is Mr. Sarb's alleged failure to determine the length or style of the railing fasteners and his failure to properly measure the ramp to determine if it was high enough to require balusters.

We agree with the trial court that, at best, Ms. Rakowski's evidence establishes only ordinary negligence, not gross negligence. No reasonable juror could conclude that Mr. Sarb's conduct was "so reckless as to demonstrate a substantial lack of concern for whether

---

"To impose liability upon governmental entities for failure to adequately enforce fire and safety codes may discourage some of them, particularly the smaller communities . . . , from adopting such codes at all, as the financial commitment necessary to assure complete enforcement—and the ability to respond in damages—could well be crippling in its effects."

[9] "Pursuant to MCL 691.1407(2), a governmental employee may be liable for grossly negligent conduct if that conduct is 'the proximate cause of the injury or damage.' MCL 691.1407(2)(c)." *Curtis v City of Flint,* 253 Mich App 555, 562-563; 655 NW2d 791 (2002).

an injury results," as defined at the time by the governmental immunity statute, MCL 691.1407(2)(c).[10] It is well-settled that "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). Accordingly, the trial court correctly ruled that Mr. Sarb is entitled to summary disposition on this issue.

Moreover, were we to conclude that Ms. Rakowski established gross negligence, the trial court erred when it concluded that Mr. Sarb's conduct proximately caused Ms. Rakowski's injury. Specifically, the trial court held that the injury occurred because Ms. Rakowski would not have used the ramp unless Mr. Sarb inspected and approved it. Contrary to the trial court's apparent position, to be the proximate cause of an injury, the alleged gross negligence must be "the one most immediate, efficient, and direct cause of the injury or damage . . . ." *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). Here, it is beyond dispute that the loose handrail caused Ms. Rakowski to fall and sustain injuries. Regardless of whether, six months before her injury, Mr. Sarb correctly approved the ramp during his inspection, his conduct could not be "the one most immediate, efficient, and direct cause" of Ms. Rakowski's injury. Therefore, the trial court should have granted summary disposition to Mr. Sarb.

### IV. CONCLUSION

For the reasons set forth above, we conclude that Mr. Sarb owed no duty to Ms. Rakowski. We further hold that reasonable minds could not differ regarding whether Mr. Sarb was a qualified governmental actor

---

[10] The definition is now found at MCL 691.1407(7)(a).

under Michigan's governmental tort liability act, whether Mr. Sarb's conduct amounted to gross negligence, or whether Mr. Sarb's conduct was the proximate cause of Ms. Rakowski's injuries. The trial court's denial of Mr. Sarb's motion for summary disposition is reversed.