# STATE OF MICHIGAN

# COURT OF APPEALS

IAN RABER,

        Plaintiff-Appellant,

v

AVONDALE SCHOOL DISTRICT and
KOURTNEY THOMPSON,

        Defendants-Appellees,

and

AVONDALE SCHOOL BOARD,

        Defendant.

UNPUBLISHED
November 8, 2016

No. 328289
Oakland Circuit Court
LC No. 2014-138210-NO

Before: STEPHENS, P.J., and SAAD and METER, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition to defendants with regard to plaintiff's gross negligence claims. The trial court granted defendants' motion for summary disposition with respect to all of the named defendants. On appeal, plaintiff challenges the trial court's decision with regard to defendant Kourtney Thompson. We affirm.

This case arose from an impact-related injury sustained by plaintiff, a student athlete at Avondale High School, during an "open gym" activity hour before the start of classes on February 14, 2011. Thompson, a baseball coach and social studies teacher, was allowed to supervise but not coach at this preseason, voluntary activity and was supervising that morning. Plaintiff and another student were playing catch with a baseball when the baseball, traveling at an estimated 70 miles an hour, nicked the edge of plaintiff's glove and collided with plaintiff's unprotected chest. Plaintiff began to make convulsive, jerking motions before collapsing on the floor. Some of the other student athletes ran from the gym to locate Thompson, who had left the students unsupervised to use the restroom and visit his classroom. Thompson ran back to the gym, determined that plaintiff was still breathing, and called 911. Observing some jerking motions, Thompson concluded that plaintiff might have been suffering from a seizure. He cleared the area around plaintiff to wait for paramedics to arrive. He did not check plaintiff's breathing or pulse again, although plaintiff's face and lips were turning gray or blue. He did not

-1-

perform cardiopulmonary resuscitation (CPR) or attempt to employ an automatic external defibrillator (AED).

When paramedics arrived, Thompson did what he could to assist. Paramedics determined that plaintiff was in cardiac arrest caused by the impact of the baseball, a rare occurrence. After two shots of epinephrine, one shot of atropine, five shocks with a defibrillator, and constant administration of CPR, they managed to obtain a pulse and assisted breathing. Plaintiff began breathing on his own while in transport, and spent two weeks in the hospital. Plaintiff sustained anoxic brain damage as a result of the incident, leaving him with some degree of cognitive and motor dysfunction. Thereafter, plaintiff brought suit, alleging gross negligence. Relevant here, plaintiff argued that Thompson's failure to appropriately respond to plaintiff's injury, including through the application of CPR and use of an AED, violated Avondale's policy regarding medical emergencies and was otherwise grossly negligent. The trial court disagreed and granted defendants' motion for summary disposition.

On appeal, plaintiff argues that the trial court erred when it granted defendants' motion for summary disposition and determined that reasonable minds could not differ regarding whether Thompson's alleged failure to respond to plaintiff's injuries constituted gross negligence. We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Although defendants requested summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10), the trial court did not specify, in its oral conclusions or written order, which subsections it relied upon in granting defendants' motion. At any rate, the pertinent question, as plaintiff asserts, is whether reasonable minds could differ regarding whether Thompson's actions amounted to gross negligence. See, e.g., *Jackson v Co of Saginaw*, 458 Mich 141, 146-147; 580 NW2d 870 (1998).

Plaintiff does not dispute that Thompson is entitled to the protections of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, which limits his liability to that for gross negligence. The relevant subsection of the GTLA provides, in pertinent part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency [and] each volunteer acting on behalf of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).][1]

More succinctly, MCL 691.1407(2) provides that governmental employees are immune from tort liability when acting within the scope of their authority unless their actions constitute gross negligence that is the proximate cause of an injury. *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004). Thus, as plaintiff concedes, the propriety of the trial court's order granting defendants' motion for summary disposition turns on whether plaintiff made a showing of gross negligence in the lower court. We find that he did not.

"Gross negligence" is defined within the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a); *Costa v Community Emergency Medical Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). Similarly, this Court has explained that an actor is grossly negligent when an objective observer concludes that "the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90. Moreover, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). Rather, to establish gross negligence the evidence must demonstrate that "the contested conduct was substantially more than negligent." *Costa*, 475 Mich at 411. Summary disposition on the issue of whether conduct constitutes gross negligence is not appropriate if "reasonable jurors could honestly reach different conclusions . . . . However, if reasonable minds could not differ, the issue may be determined by a motion for summary disposition." *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010).

Plaintiff argues that there was sufficient evidence to allow reasonable jurors to reach different conclusions regarding whether Thompson was grossly negligent when he "did nothing" in response to plaintiff's medical emergency. Specifically, plaintiff argues that a jury should determine whether Thompson should have administered CPR or applied an AED.

However, in light of all of the evidence presented, no reasonable juror could have found that Thompson's actions amounted to "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). It is clear from the evidence that Thompson was genuinely concerned about plaintiff and attempted to avoid further injury to plaintiff and to seek immediate assistance from medical professionals. Thompson checked that plaintiff was breathing and called 911 immediately. He stated, "given I had checked his chest, and I had come to the conclusion that he was breathing, I did not check for a pulse." He waited with plaintiff, offering what comfort he could, for the paramedics to arrive. After paramedics arrived, Thompson was very cooperative and rendered CPR at their direction until plaintiff's breathing had been restored. Thompson stated that he had never heard of anyone having a cardiac event from playing catch and that this possibility did not occur to him. He stated that he

---

[1] A 2013 amendment to MCL 691.1407 did not affect the pertinent language.

did not really know what was going on and speculated about whether plaintiff had a punctured lung; he stated that he did not "want to make [the] situation worse."

Thompson admitted that he did not administer CPR or attempt to employ an AED at any point before the arrival of the paramedics. Although there was some evidence presented to support plaintiff's claim that immediate application of those techniques could have lessened the extent of plaintiff's injury, Thompson's failure to employ those techniques did not amount to gross negligence. As this Court has explained, "[s]imply alleging that an actor could have done more" is insufficient to prove gross negligence because, "with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea*, 263 Mich App at 90. Thus, merely "saying that a defendant could have taken additional precautions" will not support a finding of gross negligence. *Id.*

Thompson, who was not certified in first aid or CPR or trained on AEDs at the time of the incident but had received some training in the past, testified that he did not recognize that plaintiff was suffering from cardiac arrest. Thompson's failure to accurately diagnose a rare injury is not evidence that he "simply did not care about the safety or welfare" of plaintiff. *Id.* Indeed, Thompson explained:

> I live in a world in which my job is to safeguard the safety of all students. It's something I take very serious [sic]. And it's not something I take lightly. And, you know, I knew that a kid in front of me needed something that went beyond anything I was prepared or trained to do. So my focus from that point on was to get him what he needed.
>
> There's no way, shape or form I would just disregard [plaintiff] because he is a student. He is one of my guys. And he is down, I'm going to do the best I can to help him. And the idea of just blatantly disregarding him is ludicrous.

Further, one of the student witnesses to the incident testified that Thompson showed genuine concern for plaintiff, an opinion plaintiff offers no evidence to refute.

Similarly, plaintiff's argument that Thompson failed to comply with Avondale Public Schools' policies or other professional standards or training lacks merit, because, under the circumstances, any failure by Thompson to follow a policy or procedure would not create a question of fact regarding gross negligence. Indeed, we note that a failure to abide by best practices is evidence of ordinary negligence, and, as previously stated, evidence of ordinary negligence is not sufficient to create a jury question regarding gross negligence. See, e.g., *Maiden*, 461 Mich at 125-128, *Rakowski v Sarb*, 269 Mich App 619, 635-636; 713 NW2d 787 (2006), and *Xu v Gay*, 257 Mich App 263, 271; 668 NW2d 166 (2003). Additionally, a look at Avondale's bylaws reveals that, even if a failure to comply constituted evidence of gross negligence, Thompson's response to plaintiff's injury complied with the rules outlined therein. Avondale's policy regarding the handling of "student accidents" states that "[e]mployees should administer first aid *within the limits of their knowledge* of recommended practices." We note that multiple Avondale officials testified that the typical procedure in cases of medical emergencies is for the teacher to call 911 and make decisions based on the confronted circumstances and the teacher's abilities.

Although Thompson had been CPR-certified in the past, he was not certified in CPR or AED administration at the time of the incident. Further, he testified that he did not make the connection between chest trauma and a potential cardiac event, instead wondering whether plaintiff was suffering from a seizure or punctured lung. According to a responding paramedic, CPR or AED administration would not be appropriate to treat a seizure. Thompson therefore reacted appropriately in administering aid within the limits of his knowledge. The failure of Thompson, who was not trained in medicine, to recognize that plaintiff was suffering from a rare form of cardiac arrest was not a violation of Avondale's policy regarding the administration of first aid.

In the same vein, we reject defendant's argument that a question of fact on the issue of gross negligence was evidenced by the opinions of school officials who, in plaintiff's interpretation of their testimony, found Thompson's actions unreasonable under the circumstances. As previously discussed, even the failure to meet professional standards, while perhaps evidence of ordinary negligence, does not constitute gross negligence as defined by the GTLA. *Rakowski*, 269 Mich App at 635-636; *Xu*, 257 Mich App at 271. The evidence presented, even when viewed in the light most favorable to plaintiff, simply did not establish a question of fact regarding *gross* negligence.

Plaintiff further argues that the perceived placement of importance on CPR training and administration by the Michigan Legislature creates a question of reasonableness. This argument, too, lacks merit. Even assuming that Thompson himself violated a statutory duty, the violation of a statutorily imposed duty gives rise to a presumption of only ordinary negligence and not gross negligence. *Poppen v Tovey*, 256 Mich App 351, 358; 664 NW2d 269 (2003).

Finally, although the trial court did not reach the issue of proximate cause after determining that plaintiff had failed to show that Thompson acted with gross negligence, we note that lack of proximate cause provides an independent basis for affirming the trial court's grant of defendants' motion for summary disposition. As previously noted, to impose liability on a governmental employee under the GTLA, a plaintiff must show (1) gross negligence, and (2) that the gross negligence was the proximate cause of the plaintiff's injury. MCL 691.1407(2)(c). The Michigan Supreme Court has held that the GTLA, as applied to government employees, "contemplates *one* cause," which that Court described as "the immediate efficient, direct cause preceding the injury." *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000) (citation and quotation marks omitted). In other words, "[t]o be held liable under the GTLA, a defendant's gross negligence must be *the* most immediate cause of a plaintiff's injuries—it is not enough that the defendant's action simply be 'a' proximate cause." *Tarlea*, 263 Mich App at 92. A mere failure to intervene cannot be the most direct proximate cause when the injury itself arises from conduct, such as the baseball throw here, of plaintiff himself or a third party. See, e.g., *Beals v Michigan*, 497 Mich 363, 365-366, 371-378; 871 NW2d 5 (2015) (upholding immunity of a lifeguard after finding that the lifeguard's failure to intervene was not "the proximate cause" of the plaintiff's drowning death), and *Tarlea*, 263 Mich App at 92-93 (upholding GTLA immunity after finding that a high school football coach's alleged failure to prevent the plaintiff from participating in team exercises was not the most immediate, proximate cause of the plaintiff's heatstroke and subsequent death, which might have been caused by a number of factors).

Based on the evidence presented, no reasonable trier of fact could conclude that Thompson's alleged failure to provide the appropriate medical care, rather than, for example, the baseball that was thrown toward plaintiff's unprotected chest, was the most immediate, proximate cause of plaintiff's injury. Accordingly, the lack of proximate cause provided a separate and independent basis to support the trial court's decision to grant summary disposition to defendants.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Henry William Saad
/s/ Patrick M. Meter