*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SIPHIWE ABNEY and ANTOINE ABNEY,

      Plaintiffs-Appellees,

v

JAMES TOMA, KYLE TOMA, LERON COLEMAN, VANESSA COLEMAN, CITY OF PONTIAC, BROOKSTONE REALTORS, LLC, JOHN DOE, JANE DOE, CITY OF PONTIAC EMPLOYEES, CITY OF PONTIAC OFFICERS, CITY OF PONTIAC AGENTS, GEORGE PHIFER, and JOSEPH SOBOTA,

      Defendants,

and

MICHAEL WILSON,

      Defendant-Appellant.

UNPUBLISHED
December 12, 2024
12:34 PM

No. 369602
Oakland Circuit Court
LC No. 2022-196903-CH

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

In this gross negligence action involving a claim of governmental immunity, defendant, Michael Wilson,[1] appeals as of right the trial court's order denying his motion for summary disposition (brought against plaintiffs, Siphiwe Abney and Antoine Abney). We reverse.

This case arises out of the renovation, rental inspection, and eventual sale of a condemned property located at Frank Street, in Pontiac, Michigan. In 2008, the city of Pontiac (the city),

---

[1] Throughout this opinion, the term "defendant" refers to defendant-appellant, Michael Wilson, unless otherwise stated.

condemned the Frank Street property, and ordered its demolition in 2010. Despite this, Vanessa Coleman and LeRon Coleman (collectively, the Colemans), owned and occupied the property beginning in 2012. Though Vanessa planned to rehabilitate the property to have it removed from the condemnation list, those plans fell through, and the property remained condemned.

Defendant, the building official of the city's Building Safety Department, knew of the property's condemnation status and dealt with the property when the Colemans owned it.[2] At one point, LeRon asked defendant to remove the condemnation from the property so he could sell it, and defendant instructed LeRon that he could not do so. Nonetheless, the Colemans eventually sold the home to Kyle Toma and James Toma, and James renovated it. James did not apply for the required renovation permits from the city, and all of his work on the home was done without inspection.

In April 2022, James requested a rental registration certificate for the property through the city. George Phifer, a rental inspector, performed an inspection on April 22, 2022, without knowledge that the property was condemned. After Phifer inspected the property, and reinspected it for some minor corrections, he informed James that the property was ready to certify, and that a rental certificate would be provided once there were tenants on the premises.

James, who was a real estate agent with defendant Brookstone Realtors, LLC (Brookstone), listed the Frank Street property and marketed it for sale. He sold it to plaintiffs in May 2022. Plaintiffs were unaware of the home's condemnation status and intended to lease the property. They went to the Building Department and requested a rental certificate, but defendant informed them that the property was condemned. After a subsequent inspection, defendant determined that to remove the property from the condemnation list, it would have to be deconstructed to ensure that James's renovations were up to code.

Plaintiffs initially filed a complaint against the city for negligently issuing a rental certificate and for failing to notify them of the property's condemnation status. The trial court dismissed the city under MCR 2.116(C)(7), and plaintiffs subsequently amended their complaint to assert gross negligence claims against defendant and Phifer. Defendant and Phifer filed a joint motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Following the parties' submission of response and reply briefs, the trial court held a hearing and determined that, while it agreed that Phifer should be dismissed, defendant should not. Accordingly, the court entered an order granting summary disposition and dismissing plaintiffs' claim against Phifer, but denying summary disposition to defendant. This appeal ensued.

Defendant contends that the trial court erred in denying his motion for summary disposition because plaintiffs failed to establish a genuine issue of material fact as to whether his conduct amounted to gross negligence that was the proximate cause of plaintiffs' injury. Specifically,

_____

[2] Defendant and George Phifer were both employed by a company called Wade Trim, Inc., which contracted with the city as part of its emergency management and reorganization process. On appeal, the parties do not dispute that defendant and Phifer are governmental employees for the purposes of establishing governmental immunity.

defendant argues: 1) he did not owe a legal duty to plaintiffs, 2) no reasonable jury would conclude that his conduct amounted to gross negligence, and 3) his actions were not the proximate cause of plaintiffs' alleged harm.  We agree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Cantina Enterprises II Inc v Prop-Owners Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363105); slip op at 3.  This Court also reviews de novo the applicability of governmental immunity and its statutory exceptions. *Madbak v Farmington Hills*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364734); slip op at 3.

MCR 2.116(C)(7) allows for dismissal of an action because of "immunity granted by law." When a defendant brings a motion for summary disposition pursuant to MCR 2.116(C)(7), this Court must accept as true the allegations in the complaint and construe them in favor of the plaintiff unless the defendant has submitted contradictory documentation. *Norman v Dep't of Transp*, 338 Mich App 141, 146; 979 NW2d 390 (2021).  "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law for the trial court to decide." *Id*. at 146-147 (citation omitted).  "If a question of fact exists, dismissal is inappropriate." *Id*. at 147.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*.  "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 7.  On review, "this Court considers the parties' documentary evidence in the light most favorable to the party opposing the motion." *Cantina Enterprises*, ___ Mich App at ___; slip op at 4.  Review is limited to the evidence presented to the trial court at the time the motion was decided. *Cleveland v Hath*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363321); slip op at 7.[3]

The governmental tort and liability act [GTLA], MCL 691.1401 *et seq*., "affords broad immunity from tort liability to governmental agencies and their employees whenever they are engaged in the exercise or discharge of a governmental function." *Kozak v Lincoln Park*, 499 Mich 465, 467; 885 NW2d 443 (2016).  "The GTLA provides several exceptions to this general

---

[3] Defendant's motion asserted grounds for summary disposition under MCR 2.116(C)(7), (8), and (10); however, throughout the motion, he relied on evidence beyond the pleadings.  Nor did the trial court specify which basis it relied on in denying defendant's motion.  Where it is not apparent from the record "which section of MCR 2.116 the trial court based its ruling, and both the defendant and the trial court relied on documentary evidence beyond the pleadings . . . this Court must construe the defendant's motion as being granted pursuant to MCR 2.116(C)(10)." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 480 n 6; 997 NW2d 307 (2022) (quotation marks and citation omitted).  Accordingly, we construe the motion as being denied under MCR 2.116(C)(7) and (10), rather than MCR 2.116(C)(8), and conduct our analysis according to those standards.

rule, all of which must be narrowly construed." *Id*. MCL 691.1407(2) grants employees of a governmental agency immunity from tort liability if the following conditions apply:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

The only issue on appeal is the third condition, whether defendant's conduct amounted to gross negligence that was the proximate cause of plaintiffs' injury. Governmental employees must raise and prove "their entitlement to immunity as an affirmative defense." *Dougherty v Detroit*, 340 Mich App 339, 348; 986 NW2d 467 (2021).

## LEGAL DUTY

"[T]he GTLA does not create any duty. Therefore, a plaintiff must establish that the governmental employee owed the plaintiff a common-law duty without regard to the defendant's status as a government employee." *Dougherty*, 340 Mich App at 347 (quotation marks and citations omitted). The duty inquiry depends on factors including "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Id*. (quotation marks and citation omitted).

Regarding the relationship of the parties, while defendant knew the prior homeowner of the Frank Street property, he did not know that the house was eventually sold to plaintiffs. Accordingly, defendant had no relationship with plaintiffs until they arrived in the office to request a rental certificate. Defendant testified that he did not know of the involved events and "until that first day when Mr. Abney came in, [defendant] saw nothing. [Defendant] knew nothing about it until that day." Thus, the parties lacked a relationship, which weighs against the finding of a duty.

Nor was the harm to plaintiffs foreseeable. A duty is not imposed on a defendant merely because an event may be foreseeable. Before an actor is required to act, "some sort of relationship must exist between the actor and the other party which the law or society views as sufficiently strong…." *Rakowski v Sarb*, 269 Mich App 619, 631; 713 NW2d 787 (2006) (citation omitted). Plaintiffs maintain that defendant "failed to do his job and inform Plaintiffs of the Property's condemnation status," which caused plaintiffs to purchase the condemned property. However, as discussed above, defendant did not previously know that the Colemans sold the property to the Tomas, or that plaintiffs subsequently bought the property from the Tomas in 2022. In fact, defendant instructed LeRon Coleman that he could not remove the condemnation status from the property to allow him and Vanessa to sell it, and there is documentation that a realtor attempting to sell the property was instructed that she could not because it was condemned. Once defendant and the city instructed the Colemans that the condemned property could not be sold, it was not foreseeable that they would disregard that instruction and sell it to the Tomas. Further, the city

was not notified upon the transfer or sale of properties. Without knowledge that plaintiffs purchased the property, defendant could not have foreseen that a buyer of the condemned property would be harmed.

Further, defendant testified that the burden of individually tracking condemned properties "would take probably five full-time people . . . on a daily basis," and that the demolition list "had over a thousand properties on it." Thus, imposing the burden to disclose a property's condemnation status on defendant would be severe. This is bolstered by the fact that this duty is already imposed on a property seller by the city's municipal code: "The seller or transferor of any property . . . shall give written notice, on forms distributed by the city and available from the city assessor's office, whether the residential property in question is currently condemned or subject to demolition procedure[.]" Pontiac Housing Code, § 22-566(a). Especially in light of this existing seller obligation, the nature of the risk presented to plaintiffs is mitigated through other actors and does not suggest imposition of a duty on defendant.

In addition to not addressing this issue in their brief on appeal, given the facts on the record, plaintiffs did not establish that defendant owed them a common-law duty without regard to his status as a government employee. *Dougherty*, 340 Mich App at 347.

GROSSLY NEGLIGENT CONDUCT

Gross negligence is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The standard "suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Dougherty*, 340 Mich App at 350 (quotation marks and citation omitted). Further, "[e]vidence of ordinary negligence or simply alleging that an actor could have done more is insufficient to meet the standard of gross negligence under the GTLA." *Id*. (quotation marks and citation omitted).

The record demonstrates that defendant was aware that the Frank Street property was condemned and occupied by the Colemans, who were also aware of its condemnation status. At some point during the Colemans' ownership, defendant knew that they desired to sell the property, which was also documented in the BS&A system that the city used to record property information, in 2016. Defendant told LeRon that he could not remove the condemnation status from the property to allow for its sale, however, and a realtor was subsequently instructed that she could not sell the property because it was condemned. Further, defendant did not know that (1) the Colemans sold the property to James Toma, (2) who renovated it without the required permits, (3) obtained a rental inspection from the city, and (4) sold the property to plaintiffs.

Once defendant learned of the situation, he acknowledged it was a mistake that the rental inspection took place, and despite instructing staff not to issue rental certificates for condemned properties, "the property should never have been registered as a rental." He also acknowledged that James Toma should have been notified of the property's condemnation status when he requested the rental inspection. However, the property's registration and inspection took place due to an administrative error, where a front desk employee "did not see the flag" in the BS&A system indicating that the property was condemned.

Even viewing these facts in the light most favorable to plaintiffs, it is not enough to demonstrate that defendant acted with "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results," MCL 691.1407(8)(a), or "a willful disregard of precautions or measures to attend to safety," *Dougherty*, 340 Mich App at 350 (quotation marks and citation omitted). Although defendant knew "off the top of his head," that the property was condemned and that the Colemans used to own it, he did not have knowledge of the property's renovation, inspection, and sale until plaintiffs appeared in the office. Defendant's failure to disclose the property's condemnation status to plaintiffs, whom he did not know existed, did not rise to the level of gross negligence. Nor did the office's administrative oversight of scheduling the rental inspection indicate recklessness or a willful disregard of precautions or risks on defendant's part.

Even if defendant's knowledge that the Colemans wanted to sell the property put him on notice that the home could be sold to prospective buyers at some unknown point in the future, given that there were too many condemned properties to individually track, this evidence does not suggest that defendant acted recklessly or willfully disregarded precautions or risks. While reasonable minds could differ regarding whether defendant's conduct was negligent, it does not amount to gross negligence under the GTLA. See *Dougherty*, 340 Mich App at 350 (quotation marks and citation omitted).

Plaintiffs point to several instances of defendant's conduct, which they contend established questions of material fact regarding his gross negligence, including:

> [P]assing a rental inspection to James Toma just prior to Plaintiffs closing on the property, noticing that James Toma did not obtain permits to renovate the condemned property and still providing him with a rental certificate, failing to inform several Property owners of the Property's condemnation status, [and] failing to include the Property on Pontiac's website although at-least 94 other properties were stated therein[.]

Each of the examples that plaintiffs offer is contradicted by the record. Analyzing them in turn, defendant was not aware that a rental inspection was performed for James Toma, and thus, did not "pass" the rental inspection. Defendant did not know that James Toma renovated the property, and no rental certificate was issued. There is no dispute that the Colemans knew of the property's condemnation status, and when defendant found out that plaintiffs owned the property, he immediately informed them that it was condemned. Finally, defendant was not in charge of maintaining the city website, although he did oversee the employee who kept track of the condemnation list and passed it along to the Information Technology Department. Thus, we agree with defendant's argument that plaintiffs' evidence in support of establishing a fact question is unsupported by the record.

PROXIMATE CAUSATION

The GTLA explicitly provides that grossly negligent conduct on the part of a governmental employee must be "the proximate cause of the injury or damage." MCL 691.1407(2)(c). "[A] governmental employee's conduct cannot be the proximate cause under the GTLA unless it was 'the one most immediate, efficient, and direct cause of the [plaintiff's] injuries.' " *Dougherty*, 340 Mich App at 353-354 (citation omitted).

Again, the complained-of conduct is that defendant did not notify plaintiffs of the property's condemnation status, and allowed a rental inspection to occur despite personal knowledge and significant documentation that the property was condemned. Plaintiffs argue that the completed rental inspection then caused them to buy the property. However, plaintiffs acknowledge that "[James] Toma was negligent in failing to obtain the proper permits" and his "comparative fault," when attached with defendant's, caused plaintiffs' damages.

Here, there are two examples of more immediate and direct conduct that caused plaintiffs to purchase the condemned property. First, the Colemans sold the property to the Tomas knowing that it was condemned. The Colemans knew that they could not sell a condemned property because defendant instructed them so. Further, James Toma renovated the property without applying for the required permits, which would have put him on notice that the property was condemned and, thus, could not have been sold to plaintiffs. Especially in light of the fact that the duty of disclosure is on the seller of a property, defendant is not the "most immediate, efficient, and direct cause of the [plaintiff's] injuries.'" *Dougherty*, 340 Mich App at 353-354 (citation omitted). Accordingly, his conduct was not "the" proximate cause of plaintiffs' damages.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney