WELLS v FIRESTONE TIRE & RUBBER COMPANY

Docket No. 44027. Submitted February 6, 1980, at Grand Rapids.— Decided June 3, 1980.

Firestone Tire & Rubber Company, hereinafter defendant, is an Ohio corporation. The defendant has various retail stores throughout the United States, some of which are divisions of Firestone while some are wholly-owned subsidiary corporations. James Wells, hereinafter plaintiff, worked at a wholly-owned subsidiary corporation of defendant, Muskegon Firestone Auto Supply and Service Stores (hereinafter Muskegon Firestone), in Muskegon, Michigan. While acting in the course of employment changing a tube and tire on a truck rim manufactured by the defendant, the rim blew apart, injuring plaintiff seriously. The defendant carried the worker's compensation coverage for all of its local branches including Muskegon Firestone. The plaintiff receives worker's compensation benefits. Subsequently, plaintiff filed the instant third-party product liability action against the defendant. The defendant moved for summary judgment on the basis that plaintiff's exclusive remedy was under the worker's compensation act. The Muskegon Circuit Court, Charles A. Larnard, J., denied summary judgment, finding that the plaintiff was not an employee of defendant, but of the separate corporation, Muskegon Firestone. The defendant appeals by leave granted. *Held:*

1. The "economic reality" test is the proper test to determine employment status in a tort action where *respondeat superior* liability is not at issue and the affirmative defense of immunity under the worker's compensation statute is asserted.

2. The "economic reality" test includes consideration of the following factors: (a) control; (b) payment of wages; (c) hiring and firing; and (d) responsibility for the maintenance and discipline.

3. The defendant, Firestone, was plaintiff's employer within the meaning of the Worker's Disability Compensation Act of 1969.

4. The exclusive remedy provision of the worker's compensa-

REFERENCE FOR POINTS IN HEADNOTES

[1-3] 81 Am Jur 2d, Workmen's Compensation § 169.

tion statute bars an employee from bringing a tort action against his employer's parent corporation where the latter is also the employee's employer under the economic reality test and the injury arose in the course of the employment.

Reversed, and case dismissed.

1. WORKERS' COMPENSATION — IMMUNITY — ECONOMIC REALITY TEST.

The "economic reality" test is the proper test to determine employment status in a tort action where *respondeat superior* liability is not at issue and the affirmative defense of immunity under the worker's compensation statute is asserted (MCL 418.131; MSA 17.237[131]).

2. WORKERS' COMPENSATION — IMMUNITY — ECONOMIC REALITY TEST.

The "economic reality" test for determination of a worker's compensation claimant's employment status includes considera-tion of the following factors: (a) control; (b) payment of wages; (c) hiring and firing; and (d) responsibility for the maintenance and discipline.

3. WORKERS' COMPENSATION — ECONOMIC REALITY TEST — TORTS — EXCLUSIVE REMEDY.

The exclusive remedy provision of the worker's compensation statute bars an employee from bringing a tort action against his employer's parent corporation where the latter is also the employee's employer under the economic reality test and the injury arose in the course of the employment.

*McCroskey, Libner, VanLeuven, Feldman, Kort-ering, Cochrane & Brock,* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *David O. Haughey* and *William J. Braaksma*), for defendant.

Before: DANHOF, C.J., and R. B. BURNS and MAC-KENZIE, JJ.

MACKENZIE, J. The defendant, Firestone Tire & Rubber Company (hereinafter "Firestone"), is an Ohio corporation with its principal headquarters in Akron, Ohio. Firestone has various retail stores around the country, some of which are run as divisions of Firestone while some are wholly-owned

or majority-owned subsidiary corporations. In Muskegon, Michigan, Firestone has two outlets; one is operated as a division of Firestone, and the second is Muskegon Firestone Auto Supply and Service Stores, located at 925 Terrace Street, Muskegon, Michigan, hereinafter termed "Muskegon Firestone". Muskegon Firestone was a wholly-owned subsidiary corporation at the time plaintiff's cause of action arose.

Plaintiff James Wells worked at Muskegon Firestone and on October 21, 1971, while acting in the course of his employment changing a tube and tire on a truck rim manufactured by Firestone, the rim blew apart, injuring him seriously. Muskegon Firestone was originally a dealership but was set up as a Michigan corporation around 1930. Defendant Firestone purchased most of its assets at that time, allowing the manager to retain a minority stock interest. Defendant Firestone has owned 100% of the stock in Muskegon Firestone since around 1960. At the time of plaintiff's accident, all of the subsidiary's directors were employees of defendant. In early 1977, the corporation, Muskegon Firestone, was liquidated and is now run as a retail division of defendant.

Firestone carried the worker's compensation coverage for all of the local branches including Muskegon Firestone. Plaintiff filed for compensation citing Firestone as his employer and commenced receiving benefits from Firestone's insurance carrier, Liberty Mutual Insurance Company, which continue to be paid at this time.

Plaintiff, subsequent to receiving benefits from Firestone, commenced the instant third-party product liability suit against Firestone. Defendant Firestone moved for summary judgment on the basis that plaintiff was barred from bringing the

action against Firestone by the exclusive remedy provision of the Michigan Worker's Disability Compensation Act of 1969, MCL 418.131; MSA 17.237(131).

The trial court found that plaintiff was not an employee of defendant Firestone but of the separate corporate entity Muskegon Firestone. Summary judgment was denied and leave to appeal to this Court was granted on June 18, 1979.

Initially, we must determine whether the question of defendant's status is an issue of law for the court or an issue of fact for the jury. In this case, the parties stipulated that the issues raised by defendant's motion for summary judgment be decided by the trial court after the parties submitted affidavits and testimony was taken at the hearing held April 3, 1977. Therefore, we are bound by the affidavits, testimony at the hearing, and facts stipulated to below. *Renfroe v Higgins Rack Coating & Mfg Co, Inc,* 17 Mich App 259, 262; 169 NW2d 326 (1969), *Nichol v Billot,* 406 Mich 284, 301; 279 NW2d 761 (1979). In such a case, "all issues of fact as well as the usual process of drawing permissible inferences from testified facts were thereby eliminated, and all that was necessary was that the court apply the relevant legal principles". *Nichol, supra,* 301.

Next, we must decide whether defendant was plaintiff's employer at the time of the injury within the scope of the Worker's Disability Compensation Act of 1969. If so, recovery of worker's compensation benefits is plaintiff's exclusive remedy, barring the products liability action. See MCL 418.131; MSA 17.237(131).

In *Nichol, supra,* the Michigan Supreme Court held that the "economic reality" test is the proper test to determine employment status in a tort

action where *respondeat superior* liability is not at issue and the affirmative defense of immunity under the statute is asserted.

The relevant factors in the "economic reality" test were stated by the Court in *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959), as follows:

"This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance and discipline, but the test of economic reality views these elements as a whole assigning primacy to no single one. See also, *Pazan v Unemployment Compensation Commission,* 343 Mich 587, dissent 592."

See also *Goodchild v Erickson,* 375 Mich 289; 134 NW2d 191 (1965), *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975), *Askew v Macomber,* 398 Mich 212; 247 NW2d 288 (1976).

The evidence indicates that while Muskegon Firestone was a separate corporate entity at the time plaintiff's cause of action arose, its operation was the same as the other retail divisions. The local store branch managers belonged to a program whereby they participated in the store's profits or losses; they ordered inventory from defendant on consignment and purchased some items outside the company for resale. The other retail store and Muskegon Firestone were both listed in the local telephone directory as divisions of Firestone. All dollar accounting was handled by the central accounting office of defendant. Local store managers did not issue company checks; they deposited all money in bank accounts in defendant's name. The local store managers received monthly

profit and loss statements regarding their individual stores.

Defendant calculated the expenses of each store in order to determine its annual operating profit or loss. Expenses charged to the stores included a percentage for worker's compensation insurance rates and other expenses attributable to payroll, rent, maintenance, etc.

The evidence further indicated that the employees of Muskegon Firestone were under the supervision of defendant and subject to the rules and regulations thereof. The common practice, however, was for the local managers to do the hiring and firing. Certain of defendant's employees had the ability to hire and fire the local managers and could, if they chose, hire and fire other local employees. The local store manager acted within the framework of defendant's regulations. Employees of retail stores did not all belong to the same union as the employees of defendant. In fact, some retail personnel were unionized while others were not. In some cases, retail stores in an entire metropolitan area were organized in the same union regardless of whether they were separate corporations.

Defendant's district supervisor, who testified that at the time of plaintiff's injury the employees of Muskegon Firestone were under his supervision and control, denied that retail store employees received different treatment depending on whether the store was a division or a separate corporation. In fact, all the retail employees were entitled to participate on the same basis in defendant's hospitalization and retirement benefit programs and other fringe benefits.

Muskegon Firestone filed a separate corporate income tax return and issued its own W-2 forms to

plaintiff and its other employees. However, all of these forms were processed at defendant's central tax department. Employees of Muskegon Firestone received paychecks from defendant through its central accounting office. Records of employment relating to plaintiff and other retail store employees were kept and administered by the personnel department of defendant Firestone.

In balancing all of these factors for the purpose of applying the economic reality test, we find that defendant Firestone was plaintiff's employer within the meaning of the Worker's Disability Compensation Act of 1969. Therefore, the trial judge erred in refusing to grant defendant's motion for summary judgment on the ground that plaintiff's exclusive remedy is under the Worker's Disability Compensation Act.

Reversed. Case dismissed. Costs to defendant-appellant.