*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES DUCKWORTH,

Plaintiff-Appellee,

and

ZURICH AMERICAN INSURANCE COMPANY,

Intervening Plaintiff,

v

CHEROKEE INSURANCE COMPANY,

Defendant-Appellee,

and

PROGRESSIVE MARATHON INSURANCE
COMPANY,

Defendant-Appellant.

FOR PUBLICATION
August 6, 2020
9:05 a.m.

No. 347865
Wayne Circuit Court
LC Nos. 14-005196-NF; 15-
 006418-NF

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff James Duckworth was injured on December 9, 2013, when he lost control of the truck he was driving. The truck was owned by Speed Express, LLC, which had contracted with plaintiff to haul and deliver goods on its behalf. Plaintiff sought personal protection insurance (PIP) benefits from Speed Express's no-fault insurer, defendant Cherokee Insurance Company. Cherokee denied the claim on the grounds that plaintiff was an independent contractor of Speed Express and not its employee for purposes of MCL 500.3114(3). The trial court agreed that plaintiff was not an employee of Speed Express under the economic reality test and therefore defendant Progressive Insurance Company, plaintiff's personal no-fault insurer, was first in

-1-

priority pursuant to MCL 500.3114(1). Progressive appeals the trial court's priority determination. We reverse and remand for further proceedings.[1]

## I. FACTS AND PROCEDURAL HISTORY

We previously summarized the underlying facts of this case:

> Plaintiff's claims arise out of a motor vehicle accident that occurred on December 9, 2013. Plaintiff had contracted with Speed Express, LCC (Speed Express) (a nonparty to this action) to drive various loads of cargo for delivery. On December 9, 2013, plaintiff was driving a tractor truck, owned by Speed Express, through the State of Arkansas, when he lost control of the tractor truck. The cargo in the tractor-trailer shifted, causing the tractor truck to overturn and trapping plaintiff inside. Plaintiff sustained serious physical injuries in the accident, for which he was hospitalized. [*Duckworth v Cherokee Ins Co (Duckworth I)*, unpublished per curiam opinion of the Court of Appeals, issued January 16, 2018 (Docket Nos. 334353, 335241), p 3.[2]]

As noted, plaintiff sought PIP benefits from Cherokee, the no-fault insurer of the tractor truck involved in the accident. Cherokee denied payment of the claim and plaintiff brought suit. Cherokee moved for summary disposition on the grounds that Progressive, plaintiff's personal no-fault insurer, was first in priority to pay PIP benefits. Cherokee argued that it did not have priority

---

[1] We review de novo a trial court's grant of summary disposition. *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). Because the trial court considered evidence outside the pleadings in making its ruling, MCR 2.116(C)(10) is the applicable subrule. See *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 776; 910 NW2d 666 (2017). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Ernsting*, 274 Mich App at 509.

The parties dispute whether the trial court's ruling under the economic reality test presents a question of fact or law. There is conflicting authority on this issue. See e.g., *Nezdropa v Wayne Co*, 152 Mich App 451, 466; 394 NW2d 440 (1986). However, even if the economic reality test presents a question of fact, courts may resolve factual questions at the summary-disposition stage when reasonable minds could not disagree on the conclusion. See e.g., *Brigs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). See also *1300 LaFayette East Coop, Inc v Savoy* 284 Mich App 522, 525; 773 NW2d 57 (2009) ("A question of fact exists when reasonable minds can differ on the conclusions to be drawn from the evidence."). For the reason stated in this opinion, we conclude that reasonable minds could not differ that plaintiff was an employee for purposes of MCL 500.3114(3) when the relevant factors of the economic reality test are considered and correctly analyzed.

[2] *Duckworth I* also contain a summary of the case's procedural history. *Duckworth I*, unpub op at 3-4. An abbreviated version of that history is presented in this opinion.

under MCL 500.3114(3) because plaintiff was an independent contractor rather than an employee of Speed Express. On May 15, 2014, plaintiff filed suit against Progressive, and the trial court denied Progressive's request to consolidate the cases. In the case involving Cherokee, the trial court determined that MCL 500.3114(3) did not apply because plaintiff was Speed Express's independent contractor.

In *Duckworth I*, we held that the trial court denied Progressive due process by adjudicating priority in a case to which Progressive was not a party, and we remanded to the trial court to consolidate the cases and allow full argument on the priority issue. *Duckworth I*, unpub op at 4-5, 7. We also addressed Cherokee and Progressive's dispute regarding the interaction of *Adanalic v Harco Nat Ins Co*, 309 Mich App 173; 870 NW2d 731 (2015), and *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84; 549 NW2d 834 (1996). In *Adanalic*, this Court affirmed the trial court's ruling that MCL 500.3114(3) did not require the truck's insurer to cover the PIP claim because the plaintiff was not an employee under the economic reality test. *Adanalic*, 309 Mich App at 190-191. However, in *Celina*, the Supreme Court held that a "self-employed person" is an employee for purposes of MCL 500.3114(3) and so may claim coverage from the insurer of the truck. *Celina*, 452 Mich at 89.

Progressive argued that *Adanalic* could not be reconciled with *Celina* because independent contractors are necessarily self-employed. We disagreed that the cases were irreconcilable, reasoning that the cases established a two-step inquiry for determining whether MCL 500.3114(3) applies. First, "[u]nder *Adanalic*, a trial court must apply the economic reality test when evaluating whether an injured party was an employee or an independent contractor for purposes of the no-fault act." *Duckworth I*, unpub at 6. Second, "if an injured party is deemed to be an independent contractor under the economic reality test," then the next inquiry under *Celina* is "whether the injured party was self-employed, i.e., acting on behalf of his or her business, at the time they were injured." *Id*. If either inquiry is answered affirmatively, then the worker is an "employee" for purposes of MCL 500.3114(3) and is entitled to benefits from the insurer of the truck.

On remand, the trial court first ruled that plaintiff was an independent contractor as to Speed Express under the economic reality test. Next, the court concluded that plaintiff was not self-employed because he had not established a business entity such as a corporation or partnership which could in turn employ him. Accordingly, the court held that MCL 500.3114(3) did not apply and Progressive was first in priority as plaintiff's personal insurer. The court entered a final judgment barring plaintiff from recovering PIP benefits in the amount of $43,628.48 for the period of December 9, 2013 through May 14, 2014, pursuant to the one-year back rule. Progressive appealed.

## II. ANALYSIS

Progressive argues that the trial court erred by concluding on remand (1) that plaintiff was not a Speed Express employee under the economic reality test and (2) that, even if plaintiff was an independent contractor, he was necessarily self-employed and acting on behalf of his own business. Because we conclude that plaintiff was an employee of Speed Express under the

economic reality test, we need not address the trial court's second finding that he was not self-employed.[3]

## A. DEFINING THE ECONOMIC REALITY TEST

"When determining the priority of insurers liable for no-fault PIP benefits, courts must examine MCL 500.3114." *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 254; 819 NW2d 68 (2012). "Under MCL 500.3114(1), a person seeking no-fault benefits must generally look first to his or her own insurer, unless one of the exceptions in MCL 500.3114(2), (3), or (5) applies." *Turner by Sakowski v Farmers Ins Exch*, 327 Mich 481, 493-494; 934 NW2d 81 (2019). MCL 500.3114(3) provides in pertinent part:

> (3) An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle. [MCL 500.3114(3).]

As an initial matter, the parties dispute what factors may be considered in applying the economic reality test. In *Parham v Preferred Risk Mut Ins Co*, 124 Mich App 618, 619-620; 335 NW2d 106 (1983), we adopted the economic reality test to determine when the injured party was an employee for purposes of MCL 500.3114(3). We stated that the factors to be considered under that test "*include*: (a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id*. at 623 (emphasis added). We recited the same nonexhaustive factors in *Adanalic*, 309 Mich App at 191. While we have routinely cited these four-general factors, we have also recognized that "[n]o single factor is controlling and, indeed, the list of factors is nonexclusive and other factors may be considered as each individual case requires." *Rakowski v Sarb*, 269 Mich App 619, 625; 713 NW2d 787 (2006). See also *Chilingirian v City of Fraser*, 194 Mich App 65, 69; 486 NW2d 347 (1992) ("The economic reality test looks to the totality of the circumstances surrounding the work performed.").

In *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972), a worker's compensation case, this Court discerned from caselaw a more comprehensive list of eight factors "for determining the nature of the existing relationship between a given employer and employee":

> First, what liability, if any, does the employer incur in the event of the termination of the relationship at will?

---

[3] We note, however, that the trial court erred by concluding that in order to be considered self-employed for purposes of the no-fault act a driver must have created a corporation or some other business entity to which he or she is an employee. In the no-fault context, a driver, as an individual, can be his or her own employee and need not establish an entity regardless of the existence of a separate business. See *Celina*, 452 Mich at 90 (explaining that while individuals cannot have a "contract for hire" with themselves for purposes of workers compensation, "the no-fault statute has no such restrictive definition of 'employee.' ").

Second, is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?

Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expenses?

Fourth, does the employee furnish his own equipment and materials?

Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?

Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?

Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.

Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute.

The Supreme Court has cited *McKissic* with approval, see *Askew v Macomber*, 398 Mich 212, 217 n 8; 247 NW2d 288 (1976), and most recently applied the eight factors, rather than merely four, in *Coblentz v Novi*, 475 Mich 558, 578-580; 719 NW2d 73 (2006), to determine whether the defendant city's attorney was an employee or independent contract for purposes of the Freedom of Information Act, MCL 15.231 *et seq*.

Progressive argues for consideration of the *McKissic* factors, while Cherokee maintains that we are confined to the four more general factors. This Court has recognized the varying formulations of the economic reality test and concluded that "[t]he tests are basically the same and each provides a rational framework." *Williams v Cleveland Cliffs Iron Co, Forest Prods Div*, 190 Mich App 624, 627; 476 NW2d 414 (1991). Indeed, there is substantial overlap between the two tests, which share common origins in worker's compensation cases.[4] At the same time, the *McKissic* factors are particularly applicable when the nature of the relationship is at issue, i.e., whether the worker is an employee or an independent contractor. *McKissic*, 42 Mich App at 208. We have always recognized that the four factors discussed in *Parham* and *Adanalic* are not exhaustive, and the *McKissic* factors are consistent with those set forth in *Adanalic* and provide additional clarity. And both the four-factor and the eight-factor tests have been applied by the

---

[4] In reciting the four-general factors, *Parham*, 124 Mich App at 623, cited *Askew*, 398 Mich 212, and *Wells v Firestone Tire & Rubber Co*, 97 Mich App 790; 296 NW2d 174 (1980), both worker's compensation cases. Notably, *Askew* relied, in part, on *McKissic*. See *Askew*, 398 Mich at 219 n 10.

Supreme Court. Accordingly, we conclude that the *McKissic* factors should be considered as well as those noted in *Adanalic* when determining whether a worker is an employee or independent contractor under the no-fault act.[5]

## B. APPLYING THE ECONOMIC REALITY TEST

In applying the economic reality test to this case, we will first analyze the four *Adanalic* factors, which overlap with the first, second, and seventh *McKissic* factors.

The record establishes that Speed Express had significant control over plaintiff's duties. The written agreement between plaintiff and Speed Express required him to follow "all guidelines" outlined in the "Driver Handbook." In addition, plaintiff testified that Speed Express required him to take a specific route when hauling freight. Plaintiff had some discretion; the agreement states that the "[d]river will be held responsible for fuel consumed for out of route miles" and "[o]ut of route is defined as any difference in mileage over 10% of the paid miles for the load assignment the driver is dispatched on." However, the phrase "out of route" itself establishes that plaintiff was supposed to follow Speed Express's directions. Further, plaintiff did not believe that he could refuse a load and assumed that Speed Express would terminate the relationship if he did, a reasonable belief considering that he had possession of a truck and trailer owned by Speed Express.[6] In fact, the agreement refers to "load *assignment*[*s*]," not offers. The control factor weighs heavily in favor of finding that plaintiff was a Speed Express employee.

Next, regarding the payment of wages, plaintiff was paid by mileage and biweekly. The payment by mileage, rather than hourly pay, perhaps indicates an independent contractor relationship, but the biweekly payment, as opposed to payment by the job, is typical of an employee-employer relationship. As for income tax records, plaintiff received a 1099 form at the end of the year and was responsible for all tax payments. While this supports a finding that plaintiff was an independent contractor, see e.g., *Adanalic*, 309 Mich App at 193, it is only one factor. Further, the 1099 tax form merely stems from the Speed Express's characterization of plaintiff as a "subcontractor" in the agreement, which is relevant but not dispositive. See *Kidder v Miller-Davis Co*, 455 Mich 25, 46; 564 NW2d 872 (1997).

The third factor concerns Speed Express's right to hire, fire, and discipline plaintiff. The main point is that if the worker can be "fired" without having any legal recourse, i.e., a breach-of-contract claim, then it is likely the worker is an employee, not an independent contractor who would have such rights. See *McKissic*, 42 Mich App at 208 ("[W]hat liability, if any, does the employer incur in the event of the termination of the relationship at will?"). Here, the agreement does not state a term or reference termination. This indicates an at-will employee relationship that

---

[5] Contrary to Cherokee's argument, consideration of the *McKissic* factors is not barred by the law of the case doctrine. In the prior appeal, the parties were arguing whether the economic reality test applied, not what it consisted of. And *Duckworth I* merely quoted the language indicating that the four factors are not exclusive. See *Duckworth I*, unpub op at 6.

[6] Plaintiff testified that after he signed the agreement with Speed Express he took the truck and trailer to his home.

could be terminated for any reason. Also, it appears that Speed Express retained the right to discipline plaintiff because the agreement stated that plaintiff was to comply with all "corrective actions and fines outlined in [the Driver Handbook]." Further, plaintiff was required to complete "new hire paperwork" and pass a drug test before he could drive for Speed Express. He also was required to submit to random drug tests as requested. These requirements are all indicative of an employee-employer relationship and thus the third factor supports a finding that plaintiff was an employee.

Under the fourth factor, the question is not whether the particular worker is integral to the business but instead whether the *type of work* is integral to the business. See e.g., *Moron v Dep't of Social Services*, 174 Mich App 718, 723; 436 NW2d 729 (1989). Indeed, the second *McKissic* factor makes clear that the focus is on the work, not the worker: "[I]s *the work being performed* an integral part of the employer's business which contributes to the accomplishment of a common objective?" *McKissic*, 42 Mich App at 208 (emphasis added). Here, Speed Express was operating a trucking business. Plaintiff's work as a truck driver was therefore integral to the business.

Consideration of the *McKissic* factors not encompassed by the four-general factors also weigh in favor of the conclusion that plaintiff should be considered an employee. Speed Express was plaintiff's sole source of income, i.e., he relied on the job for "payment of his living expenses." *Id.* at 208. Plaintiff did not "furnish his own equipment and materials" or hold himself out to the public as being available to drive trucks. *Id.* Accordingly, the third, fourth and fifth *McKissic* factors indicate an employee-employer relationship.[7]

Further, under the eighth *McKissic* factor, the objectives of MCL 500.5114(3) would be effectuated by ruling that plaintiff was an employee, thus making Cherokee first in priority. As this Court reasoned in *State Farm Mut Auto Ins Co v Sentry Ins*, 91 Mich App 109, 114; 283 NW2d 661 (1979), "A company issuing insurance covering a motor vehicle to be used in a [MCL 500.3114(2) or (3)] situation will know in advance the scope of the risk it is insuring." Cherokee accepted the risks associated with Speed Express's trucking business and so holding it liable furthers the Legislature's decision to make the insurer of business vehicle higher in priority than the worker's personal insurer when the business vehicle is involved in the accident. See also *Celina*, 452 Mich at 89 ("The cases interpreting that [MCL 500.3114(3)] have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance.").[8]

---

[7] As to the sixth *McKissic* factor, there is no record evidence indicating whether this type of work is typically done by independent contractors or employees. Further, the employer's unilateral characterization of the relationship is not controlling.

[8] Cherokee's reliance on *Mathis v Interstate Motor Freight Sys*, 408 Mich 164; 289 NW2d 708 (1980), is not persuasive. In that case, the Supreme Court held that employees were not precluded by the Worker's Disability Compensation Act from obtaining PIP benefits under MCL 500.3114(3). *Id.* at 175. Cherokee argues that MCL 500.3114(3)'s purpose is to allow employees to recover no-fault benefits in addition to worker's compensation benefits. However, a statute can serve multiple purposes. In the context of a priority dispute, the relevant purpose to consider

In arguing that plaintiff should be considered an independent contractor, Cherokee contends that this case is on all fours with *Adanalic*, 309 Mich App 173. In that case, the plaintiff, Adanalic, was injured in Indiana while unloading a pallet from a disabled box truck onto a semi-trailer. Adanalic had been hired by DIS Transportation to pick up, haul, and deliver various loads. *Id*. at 177. Adanalic owned the truck but was leasing it to DIS; a third party owned and leased the trailer to DIS. *Id*. at 177 n 1. Both the truck and the semi-trailer were insured by Harco National Insurance Company under a policy which included Michigan no-fault coverage. The policy was issued to DIS. Michigan Millers Mutual Insurance Company was Adanalic's personal no-fault insurer. *Id*. at 177. On appeal, the primary issues were whether Adanalic's claims for PIP benefits were barred by the parked-vehicle exception and the workers' compensation exclusion. *Id*. at 179-190. We affirmed the trial court's ruling that the claim was not barred and that Adanalic was entitled to PIP benefits. While Adanalic took no position on which carrier was first in priority, Michigan Millers asserted that Adanalic was an employee of DIS, and so, pursuant to MCL 500.3114(3), the insurer of the vehicle was first in priority, rather than Michigan Millers. The trial court concluded that Adanalic was an independent contractor of DIS under the economic reality test and we affirmed. *Id*. at 190-194.[9]

Contrary to Cherokee's argument, DIS had substantially less control over Adanalic than Speed Express had over plaintiff. Adanalic had a "contractual right to refuse any load offered by DIS" and the "right to determine the means of hauling any load he accepted." *Id*. at 193. In contrast, plaintiff had no such rights, and his contract imposed additional requirements not found in *Adanalic* such as mandatory compliance with a driver handbook and random drug tests. In addition, "Adanalic was also free to hire his own employees who would be responsible to him, not DIS." *Id*. at 194. Here, plaintiff did not have his own employees, and there is nothing to suggest that he could have hired workers that would have been responsible to him rather than Speed Express. In sum, Adanalic had a significant amount of control over his work, which strongly indicates an independent contractor relationship. In contrast, plaintiff had limited discretion in performing his work and he was required to comply with the company's handbook and random drug tests, both of which are hallmarks of an employee-employer relationship. These fundamental differences between the work relationships supports the conclusion that a different result in warranted here.

When all of the relevant factors are considered, the economic reality test clearly shows that an employee-employer relationship existed between plaintiff and Speed Express for purposes of the no-fault act. Accordingly, the trial court erred by determining that plaintiff was not an employee under MCL 500.3114(3). Because that subsection applies, Cherokee is first in priority to pay PIP benefits to plaintiff.

---

pertains to the Legislature's decision to make the employer's insurer liable instead of the employee's personal insurer for accidents involving the business vehicle.

[9] In *Adanalic* the trial court did not go on to address whether Adanalic was self-employed under *Celina*, 452 Mich 84, and so entitled to coverage under MCL 500.5114(3) on that basis. We did not address that issue because it was not raised or argued by any party.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause