*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARGARET GATHRIGHT, Individually and as
Personal Representative of the ESTATE OF
NATHANIEL GATHRIGHT, NATALYN NEWSOM,
ANNETTA GATHRIGHT, and NATONYA
GATHRIGHT,

        Plaintiffs-Appellees,

v

MISSION HILLS MEMORIAL GARDENS, INC.,

        Defendant,

and

CRYSTAL SPRINGS CEMETERY, also known as
CRYSTAL SPRINGS CEMENTARY,

        Defendant/Cross-Defendant-Appellant,

and

CITY OF BENTON HARBOR,

        Defendant/Cross-Plaintiff/Cross-
        Defendant-Appellant,

and

C MANAGEMENT, INC., doing business as
CRYSTAL SPRINGS CEMETERY
MANAGEMENT,

        Defendant/Cross-Plaintiff/Cross-
        Defendant.

UNPUBLISHED
June 15, 2023

No. 362182
Berrien Circuit Court
LC No. 2021-000127-CZ

MARGARET GATHRIGHT, Individually and as
Personal Representative of the ESTATE OF
NATHANIEL GATHRIGHT, NATALYN NEWSOM,
ANNETTA GATHRIGHT, and NATONYA
GATHRIGHT,

        Plaintiffs-Appellees,

v

MISSION HILLS MEMORIAL GARDENS, INC.,

        Defendant,

and

CRYSTAL SPRINGS CEMETERY, also known as
CRYSTAL SPRINGS CEMENTARY,

        Defendant/Cross-Defendant,

and

CITY OF BENTON HARBOR,

        Defendant/Cross-Plaintiff/Cross-
        Defendant,

and

C MANAGEMENT, INC., doing business as
CRYSTAL SPRINGS CEMETERY
MANAGEMENT,

        Defendant/Cross-Plaintiff/Cross-
        Defendant-Appellant.

No. 362424
Berrien Circuit Court
LC No. 2021-000127-CZ

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants-appellants Crystal Springs Cemetery (the Cemetery), the City of Benton Harbor (the City), and C Management, Inc., appeal by right the trial court's order denying their motions for summary disposition, in part, pursuant to MCR 2.116(C)(7)[2] on governmental immunity grounds. In Docket No. 362182, the Cemetery and the City (referred to collectively as "City defendants") argue that the trial court erred by denying their motion for summary disposition because plaintiffs' claim under the Prepaid Funeral and Cemetery Sales Act (PFCSA) MCL 328.211 *et seq*., was barred by governmental immunity under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*. In Docket No. 362424, defendant C Management argues that the trial court erred by finding that it was not entitled to governmental immunity although it was acting as City defendants' "agent" when the alleged torts occurred. We affirm.

## I. BACKGROUND

This case arises from a prepaid contract entered between plaintiff Margaret Gathright and the Cemetery on June 7, 2013, when Margaret purchased a burial plot, identified as number 19, for herself at the Cemetery. Margaret purchased the burial plot located directly beside her late husband, Nathaniel Gathright, who was buried in plot 18 the year prior.

In the latter part of 2013, City defendants entered into a cemetery management and operation agreement with C Management, Inc., for C Management to manage and operate the Cemetery. The agreement defined C Management as an independent contractor to the City. According to the agreement, the term was set to end on September 30, 2033, but included an option to terminate. Although several years later, C Management exercised its option to terminate the agreement with City defendants, effective March 15, 2020, C Management continued to manage and operate the Cemetery under the oversight of the City and at the direction of the Chairperson of the Cemetery board.

The dispute arose in December of 2020 when Margaret was visiting her husband's grave and discovered that a woman named Cleavy Bradley had been buried in the plot that Margaret purchased for herself in 2013. The record shows that Mrs. Bradley's son, Joe Bradley Jr., purchased plot number 20 for his mother, but that Mrs. Bradley was mistakenly buried in plot number 19.

## II. PROCEDURAL HISTORY

Margaret and her three daughters, Natalyn Newsom, Annetta Gathright, and Natonya Gathright filed suit against defendants, asserting the following 12 counts in their second amended

---

[1] *Gathright v Mission Hills Memorial Gardens*, unpublished order of the Court of Appeals, entered August 9, 2022 (Docket Nos. 362182 and 362424).

[2] The Cemetery and the City, together, moved for summary disposition under MCR 2.116(C)(7) and (C)(10). Defendant C Management moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). Defendants' arguments on appeal relate only to the trial court's denial of governmental immunity under MCR 2.116(C)(7) on their related claims.

complaint: the violation of the PFCSA (Count I) and the Michigan Consumer Protection Act (MCPA) (Count II), wrongful interference with the right of burial (Count III), breach of fiduciary duty (Count IV), negligence (Count V), gross negligence (Count VI), negligent infliction of emotional distress (NIED) (Count VII), fraudulent misrepresentation (Count VIII), negligent/innocent misrepresentation (Count IX), breach of contract (Count X), conversion (Count XI), and specific performance (Count XII). Plaintiffs sought damages in excess of $25,000 for compensatory and punitive damages, treble damages, and costs and attorney fees.

Each count asserted in plaintiffs' complaint rested in some way on allegations that defendants had a duty to reserve Margaret's pre-purchased burial plot, that they breached their duty by burying another person in her plot, and that plaintiffs were harmed as a result. The subject of these appeals are plaintiffs' claims under the PFCSA against City defendants and C Management and plaintiffs' claims for negligence and gross negligence against C Management. In their complaint, plaintiffs alleged that defendants violated the PFCSA by failing to keep "accurate accounts, books, and records of all transactions and accounts regulated by [the PFCSA]," MCL 328.218(1), and sought enforcement and damages under MCL 328.234. Plaintiffs further alleged that C Management was negligent in its management and operation of the Cemetery and breached its duty owed to plaintiffs to secure Margaret's burial plot beside her late husband by negligently burying another person in that plot, resulting in harm to plaintiffs. Plaintiffs alleged that C Management's conduct amounted to gross negligence, demonstrating a substantial lack of concern for whether injury would result by infringing on Margaret's use of her plot. The City subsequently filed a crossclaim against C Management and C Management filed a separate crossclaim against City defendants, both asserting indemnity and breach of contract against each other.[3]

City defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10), arguing that plaintiffs' tort claims were barred by governmental immunity. City defendants argued that they were immune from liability under the GTLA, MCL 691.1407(1), as the alleged tortious conduct occurred during the exercise or discharge of a governmental function and plaintiffs had otherwise failed to state a claim that fit within any of the statutorily enumerated exceptions under the GTLA. According to the City, it's operation of a cemetery was a governmental function, as defined by MCL 691.1401(c), because the Michigan Constitution, Const 1963 art 7 § 23, and Home Rule Cities Act, MCL 117.1 and MCL 117.4e, explicitly authorized a municipality to own and operate a cemetery, as did the city charter and ordinances, Benton Harbor Ordinances, § 12-20. Moreover, the City argued, the Cemetery was not a separate legal entity from the City and, therefore, not subject to suit. MCR 2.201(C). City defendants further argued that plaintiffs failed to state a claim under the PFCSA because the Act did not apply to the sale or resale of the cemetery burial plot at issue. Rather, their argument goes, the PFCSA regulated funeral and cemetery merchandise and services, and the use of funds received by sellers and providers of those goods and services. City defendants argued that the PFCSA did not contemplate the sale of land, including the sale of cemetery plots, citing MCL 328.214(2), MCL 328.213(g), and MCL 328.214(e).

---

[3] Defendants do not raise any issues on appeal related to the trial court's rulings on their crossclaims.

C Management also moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10), seeking dismissal on all counts of plaintiffs' complaint. C Management first argued that it was immune from plaintiffs' tort claims pursuant to MCL 691.1407(2) because "agents" of government entities are cloaked with governmental immunity under the GTLA when acting within the scope of their employment. C Management alleged that it was an agent of the Cemetery under common law agency principles because the Cemetery's board controlled the actions of C Management. C Management alleged that it acted within its authority when selling the burial plot to the Bradley family and that its operation of a public cemetery was an exercise of the Cemetery's governmental function, as delineated under the city ordinances. C Management argued that it did not engage in grossly negligent conduct, considering that it reviewed the available records and inspected the burial plot prior to selling it to the Bradley family. C Management also argued that the sale to the Bradley family occurred *after* it had already terminated the cemetery management agreement with City defendants and relinquished all control over the cemetery operations to the Cemetery's board members.

C Management also sought dismissal of plaintiffs' complaint on other grounds, asserting, in relevant part, that it was entitled to judgment as a matter of law on plaintiffs' claims related to the PFCSA, negligence, and gross negligence. C Management argued that it was not managing the Cemetery when Margaret purchased the subject burial plot in 2013 because that event pre-dates the effective date of the cemetery management agreement between defendants. C Management also argued that after contracting to provide management services for the Cemetery, it acted reasonably under the circumstances despite City defendants' poor recordkeeping, pointing fault at City defendants for their purported failure to record Margaret's purchase of burial plot 19.

Plaintiffs filed one brief in response to both C Management and City defendants' motions for summary disposition and voluntarily dismissed several claims against defendants.[4] Remaining were plaintiffs' claims related to the PFCSA, gross negligence, breach of contract, and their request for specific performance against all defendants and plaintiffs' claims for negligence, wrongful interference with the right of burial, and conversion against only C Management. Plaintiffs conceded that City defendants were entitled to immunity from tort liability under the GTLA. However, plaintiffs argued that C Management was not governmentally immune from liability because only governmental agencies and their employees could enjoy the GTLA's grant of immunity, MCL 691.1407. Plaintiffs argued that private entities, such as C Management, are not government agencies nor employees, even when the private entity contracts with, or acts on behalf of, a governmental agency. Aside from the management agreement, C Management retained its separate identity as a for-profit corporation, which was governed by its own board of directors, and unlike a governmental agency, C Management's creation was not mandated by law. Therefore, immunity under the GTLA was inapplicable to C Management.

Plaintiffs further argued in their response that defendants violated MCL 328.218(1) of the PFCSA by failing to keep accurate accounts, books, and records of all transactions and accounts,

---

[4] Plaintiffs voluntarily dismissed against all defendants their claims under the MCPA and for breach of fiduciary duty, NIED, fraudulent misrepresentation, and negligent/innocent misrepresentation. Plaintiffs further agreed to dismiss three counts for wrongful interference with the right of burial, negligence, and conversion against only City defendants.

-5-

including the record evidencing Margaret's purchase of plot 19. According to plaintiffs, defendants admitted in their crossclaims against each other that the other failed to properly maintain the cemetery records. Plaintiffs alleged that the Bradley family was permitted to purchase and bury Ms. Bradley in the plot owned by Margaret solely because defendants failed to maintain accurate records of their transactions. Had defendants complied with the statute, Margaret's burial plot would not have been resold to the Bradley family and the lawsuit would have never occurred. Plaintiffs acknowledged that C Management was not involved in the original sale of plot 19 to Margaret, but asserted that C Management facilitated the resale of the plot to the Bradley family and the subsequent burial of Mrs. Bradley in the plot owned by Margaret. Plaintiffs argued that governmental immunity did not apply and that a city ordinance could not preempt state law such as the PFCSA. Nor could defendants contract or indemnify themselves around the mandates of the PFCSA explicitly authorizing the court to award damages and other relief to plaintiffs under MCL 328.234.

In reply, City defendants argued that plaintiffs' claim for monetary damages under the PFCSA was barred by governmental immunity and that plaintiffs failed to plead in avoidance of governmental immunity. City defendants argued that although the PFCSA may permit a private enforcement action under MCL 328.234, the statute does not otherwise create a private cause of action for the negligent maintenance of cemetery records. Nor does the statute contain an express legislative authorization in avoidance of governmental immunity. City defendants argued that the PFCSA does not apply to the sale of funeral plots under MCL 328.216(1) and that cemeteries owned and operated by municipalities were exempt from the requirements of the Cemetery Regulation Act under MCL 456.530(1). Moreover, City defendants alleged that while MCL 328.218(1) imposed a statutory duty on registrants to maintain accurate records, they were not "registrants" as defined by the Act, considering that they did not register with the Department of Labor and Economic Growth under MCL 328.215(g).

City defendants further argued that plaintiffs' claim for breach of contract and request for specific performance was limited by Benton Harbor Ordinances, § 12-20, which provided that the supervisor of cemeteries could correct any errors made in the interment of remains by refunding money or removing and reinterring remains in a plot of equal value and similar location. According to City defendants, the Cemetery supervisor attempted to remedy the errors by offering to refund Margaret for the price of her burial plot or to locate two unused plots for both Margaret and Nathaniel. City defendants argued that plaintiffs were contractually limited to the supervisor's remedies and were not otherwise entitled to further relief.

III. TRIAL COURT DECISION

Following oral argument on City defendants and C Management's motions for summary disposition, the trial court entered its written order, granting in part and denying in part defendants' motions for summary disposition. Regarding the four remaining claims against City defendants, the court granted summary disposition on plaintiffs' gross negligence claim, but denied summary disposition regarding plaintiffs' claims related to the PFCSA, breach of contract, and specific performance. As to the seven counts remaining against C Management, the trial court granted summary disposition to C Management regarding plaintiffs' wrongful interference with the right of burial and conversion claims, but denied summary disposition on plaintiffs' remaining claims

under the PFCSA and for negligence, gross negligence, breach of contract, and specific performance.

The trial court found that City defendants were immune from tort liability under the GTLA. The court found that City defendants, as political subdivisions under MCL 691.1401(e), were governmental agencies for the purposes of the GTLA, MCL 691.1407(1). The court further found that cemetery responsibilities constituted governmental functions, MCL 691.1401(b), and the city ordinance governed cemeteries, Benton Harbor Ordinances, § 12-1. The court found that plaintiffs had not met their burden of pleading in avoidance of governmental immunity under any exception, and held that based on the facts before it, the proprietary-function exception to governmental immunity, MCL 691.1413, did not apply. Having found that governmental immunity applied to City defendants, the court dismissed plaintiffs' claim that City defendants engaged in grossly negligent conduct when the alleged torts occurred, as MCL 691.1407(2)(c) only permits liability against the individual actor and not the governmental entity.

On the other hand, the court found that C Management was not immune from tort liability under the GTLA, MCL 691.1407(2). The court found that C Management was an agent of City defendants, acting under a contract, whose actions were ministerial and therefore not shielded by governmental immunity under the GTLA. The court found that C Management was responsible for the Cemetery and its accompanying duties during the term of the agreement, between September of 2013 and March of 2020. After C Management exercised its option to terminate the agreement, it continued its obligations by acting on the Cemetery board's behalf and at the direction of the Cemetery board chairperson, receiving compensation for its services. The court held that while C Management presented sufficient evidence establishing its agency relationship with City defendants, it was unprotected by governmental immunity because its actions while serving as an agent were ministerial.

The trial court further found that dismissal was not warranted under MCR 2.116(C)(7) as to plaintiffs' claims related to the PFCSA, breach of contract, and specific performance on governmental immunity grounds, as the GTLA's grant of immunity from tort liability did not extend to claims sounding in contract law. Concerning plaintiffs' claim under the PFCSA, the court found that "[g]overnmental immunity does not encompass a breach of contract claim, for which a remedy may be obtained in the form of compensatory damages." The court also declined to dismiss that claim under MCR 2.116(C)(10), finding that there remained genuine issues of material fact on the PFCSA's applicability to the contract for the sale of the burial plots and services. The court considered the statutory definitions of burial rights, cemetery services, funeral services, interment, and prepaid contract, and found that reasonable minds could differ as to whether the PFCSA's meaning of those words could encompass the issues in the case at bar. MCL 328.214(e), 213(a) and (g), and 214(e) and (i), and 215(d).

The trial court further found genuine issues of material fact regarding plaintiffs' breach of contract claim, precluding summary disposition as to all defendants under MCR 2.116(C)(10). The court found that plaintiffs adequately presented evidence demonstrating the elements for a breach of contract, as Margaret purchased the burial plot for adequate consideration, with the expectations of being buried therein, and that Margaret, because of defendants' alleged breach of contract, could no longer be buried in that plot without a significant change of circumstances. The

court additionally found that specific performance was an available remedy because burial plots constitute real property.

As to plaintiffs' remaining tort claims against C Management, the trial court granted summary disposition in favor of C Management for the wrongful interference with the right of burial and conversion claims, but denied summary disposition regarding plaintiffs' gross negligence and negligence claims. The court found no interference by C Management with plaintiffs' right to bury Nathaniel nor Margaret, and that an action for conversion could not lie with respect to realty such as burial plots. The court further found genuine issues of material fact regarding C Management's gross negligence and negligence. The court found that while C Management provided in its affidavit that it took reasonable steps to verify the correct burial plot, by reviewing records available to it and awaiting approval from the Cemetery board, plaintiffs countered by a showing of their receipts, exhibits, and allegations of other facts to the contrary, precluding summary disposition in favor of C Management.

In Docket No. 362424, C Management argues on appeal that the trial court erred by finding that it was not immune from tort liability under the GTLA, MCL 691.1407(2). C Management argues that the trial court properly found that it had established an agency relationship with City defendants and that its agency relationship with City defendants met the standard of an "employee" under MCL 691.1407(2). C Management argues that it is immune from tort liability under the GTLA because the alleged torts occurred while serving in its capacity as City defendants' agent and during the exercise or discharge of a governmental function, and no exception to governmental immunity applied. Moreover, C Management did not engage in grossly negligent conduct when the alleged torts occurred. On this basis, C Management argues that it is entitled to governmental immunity under MCL 691.1407(2), but that the trial court erred by ultimately denying governmental immunity to C Management based on its erroneous findings that C Management's actions while serving as an agent to City defendants were ministerial in nature. And, its entitlement to governmental immunity necessarily bars plaintiffs' claim under the PFCSA and for gross negligence and ordinary negligence.

In Docket No. 362182, City defendants argue that the trial court erred by treating the Cemetery as a separate legal entity from the City. Additionally, City defendants argue that any liability under the PFCSA is tort liability against which governmental immunity under the GTLA applies.

## IV. STANDARD OF REVIEW

Summary disposition under MCR 2.116(C)(7) is appropriate based on immunity granted by law. MCR 2.116(C)(7). Whether governmental immunity applies under the GTLA is a question of law that is reviewed de novo on appeal. *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006). When reviewing a summary disposition motion under MCR 2.116(C)(7), "the court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party." *Citizens Ins Co of America v Univ Physician Group*, 319 Mich App 642, 648; 902 NW2d 896 (2017). "If no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Mays v Snyder*, 323 Mich App 1, 25; 916 NW2d 227 (2018) (quotation marks and citation omitted), aff'd sub nom *Mays v Governor*, 506

Mich 157; 954 NW2d 139 (2020). However, if a question of fact does exist, dismissal is inappropriate. *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). Whether this Court has jurisdiction is a question of law that is also reviewed de novo. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). Similarly, we review de novo issues of statutory interpretation. *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

## V. JURISDICTION

Preliminarily, we address plaintiffs' argument that this Court does not have jurisdiction as to City defendants' appeal because "all of the claims [] [to which] governmental immunity applied, were dismissed, either voluntarily or by the trial [c]ourt." Plaintiffs also argue that this Court lacks jurisdiction over C Management's appeal because C Management is a private, for-profit corporation with no standing to claim governmental immunity protection.[5]

This Court's jurisdiction is governed by statute and court rule. *Chen*, 284 Mich App at 191. A defendant may appeal as of right an order denying summary disposition under MCR 2.116(C)(7) if the order denied governmental immunity to a governmental party. MCR 7.202(6)(a)(v) (stating that a "final order" includes "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity"); MCR 7.203(A)(1) (provides an appeal of right from a final judgment or order as defined in MCR 7.202(6)). In an appeal by right from an order denying a claim of governmental immunity, "this Court does not have the authority to consider issues beyond the portion of the trial court's order denying the defendant's claim of governmental immunity." *Pierce v Lansing*, 265 Mich App 174, 182; 694 NW2d 65 (2005).

Here, the trial court denied, in part, City defendants' motion for summary disposition under MCR 2.116(C)(7) on plaintiffs' counts for the alleged violation of the PFCSA and breach of contract. Although the trial court found that City defendants were a governmental agency shielded by governmental immunity, the court ultimately held that governmental immunity does not encompass claims sounding in contract law. City defendants appealed by right the portion of the trial court's order denying their motion for summary disposition on governmental immunity grounds regarding the PFCSA claim, arguing that any liability under the PFCSA is a form of tort liability for which governmental immunity should apply.

---

[5] Plaintiffs assert that C Management and City defendants' appeals were improperly filed on the eve of trial in order to stop the trial court proceedings and give them more time to file an application for leave to appeal. However, plaintiffs' argument, speculating as to why defendants' claims of appeal were filed, is irrelevant to this Court's jurisdiction. Nevertheless, the record shows that defendants timely filed their claims of appeal, as City defendants filed a claim of appeal within two days and C Management filed its claim of appeal within 21 days after the trial court denied their motions for summary disposition on governmental immunity grounds. See MCR 7.204(A)(1)(a) (providing that an appeal by right must be taken within 21 days of the judgment or order appealed from).

The trial court also denied, in part, C Management's motion for summary disposition under MCR 2.116(C)(7), holding that C Management was not entitled to governmental immunity. While the court found that C Management demonstrated sufficient evidence of its agency relationship with City defendants, the court ultimately held that agents of a governmental agency are not cloaked with immunity under the GTLA when the agent's duties were ministerial in nature. C Management appealed by right that portion of the trial court's order denying its motion for summary disposition on the basis of governmental immunity, arguing that the trial court erred because agents are immune from tort liability under MCL 691.1407(2) of the GTLA, irrespective of whether the agents' duties were discretionary or ministerial. C Management also appealed plaintiffs' tort claims remaining against C Management, arguing that those claims are barred by governmental immunity.

City defendants and C Management each appealed as of right the trial court's order denying them, in some fashion, governmental immunity under MCR 2.116(C)(7). See MCR 7.203(A)(1) and MCR 7.202(6)(a)(v). City defendants appeal the trial court's denial of governmental immunity under MCR 2.116(C)(7) on the PFCSA claim, while C Management appeals the trial court's complete denial of its immunity as to any of plaintifffs' claims. In both matters, defendants' arguments were directly considered and denied by the trial court in the context of governmental immunity. The trial court's order fits squarely within the final order definition in MCR 7.202(6)(a)(v) (an order denying governmental immunity to a governmental party under MCR 2.116(C)(7)). This Court has jurisdiction over the claims of appeal. MCR 7.203(A); MCR 7.202(6)(a)(v).

## VI. DOCKET NO. 362182—CITY DEFENDANTS

City defendants argue that the trial court erred when it determined that plaintiffs' claim under the PFCSA was a breach of contract claim not barred by the GTLA. Specifically, City defendants argue any liability under the PFCSA is a form of tort liability against which governmental immunity applies and that plaintiffs failed to plead in avoidance of that immunity.

Under the GTLA, MCL 691.1407, government agencies are immune from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). The GTLA "speaks only to immunity from tort liability and does not grant immunity from contract claims." *Rocco v Mich Dep't of Mental Health*, 114 Mich App 792, 799; 319 NW2d 674 (1982), aff'd sub nom *Ross v Consumers Power Co*, 420 Mich 567; 363 NW2d 641 (1984). The GTLA defines "governmental function" to mean "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b). Under certain narrowly construed exceptions, "the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). The GTLA provides several narrow exceptions to governmental immunity, including (1) the highway exception, MCL 691.1402, (2) the motor vehicle exception, MCL 691.1405, (3) the public building exception, MCL 691.1406, (4) the governmental hospital exception, MCL 691.1407(4), (5) the proprietary function exception, MCL 691.1413, and (6) the sewage system event exception, MCL 691.1417.

A party pleads in avoidance of governmental immunity by stating a claim that fits within one of the statutory exceptions or by pleading facts that demonstrate that the alleged tort occurred

outside the exercise or discharge of a governmental function. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 327; 869 NW2d 635 (2015). "A party filing suit against a governmental agency bears the burden of pleading his or her claim in avoidance of governmental immunity." *In re Bradley Estate*, 494 Mich at 377.

As discussed below, although the trial court erred in holding that plaintiffs' claim arising under the PFCSA sounded in contract, the trial court properly denied summary disposition to City defendants, albeit for the wrong reasons. *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 374; 909 NW2d 1 (2017) (holding that a trial court's ruling will be undisturbed on appeal where the right result was reached, but for the wrong reason).

## A. TORT LIABILITY

The trial court erred by finding that plaintiffs' claim under the PFCSA sounded in contract, not tort, as the underlying claim was premised on City defendants' breach of a noncontractual duty imposed by law. The GTLA does not apply when a lawsuit against a governmental agency does not seek to impose "tort liability." *Eplee v Lansing*, 327 Mich App 635, 646; 935 NW2d 104 (2019). "Tort liability" as used in MCL 691.1407(1) of the GTLA, "means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *In re Bradley Estate*, 494 Mich at 385. In determining whether a claim imposes "tort liability," courts must "first focus on the nature of the duty that gives rise to the claim." *Id.* at 388-389.

> If the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable. However, if the wrong is not premised on a breach of a contractual duty, but rather is premised on some other civil wrong, i.e., some other breach of a legal duty, then the GTLA might apply to bar the claim. In that instance, the court must further consider the nature of the liability the claim seeks to impose. If the action permits an award of damages to a private party as compensation for an injury caused by the noncontractual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable. [*Id.* at 389 (footnotes omitted).]

An action in tort will lie when the legal duty arises "separately and distinctly" from the contractual agreement. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 169; 809 NW2d 553 (2011). See also *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 52; 649 NW2d 783 (2002) ("[A]n action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established.").

The precise nature of the duty that gave rise to plaintiffs' claim under the PFCSA was noncontractual, as plaintiffs' allegations concerned City defendants' violation of an obligation imposed by law under the PFCSA. *In re Bradley Estate*, 494 Mich at 384 ("when a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort"). Plaintiffs alleged in their complaint that City defendants violated MCL 328.218(1) of the PFCSA by failing to keep "accurate accounts, books, and records" of its transactions, resulting in City defendants' mistaken burial of another person in the plot owned by Margaret. Plaintiffs sought enforcement and relief for City defendants' purported violation of the Act under MCL 328.234, which permits any person to bring an action, "whether or not that person has purchased a prepaid

contract," to force compliance with the PFCSA.[6] Although the PFCSA governs prepaid contracts concerning funeral and cemetery merchandise and services, a cause of action alleging violations of the PFCSA may be premised on "a wrong independent of a contract," *In re Bradley Estate*, 494 Mich at 383 (quotation marks and citation omitted), as is the case here.

Plaintiffs' claim was premised on their allegation that City defendants breached their statutory duty to maintain their records under MCL 328.218(1). That duty was "separate and distinct" from their contractual obligations with plaintiffs. *Loweke*, 489 Mich at 169. In fact, plaintiffs separately asserted their claim for breach of contract in their complaint, alleging that City defendants breached the prepaid contract by failing to perform a specific contracted for promise, i.e., securing Margaret's plot, and sought specific performance. Plaintiffs' breach of contract claim concerned only those duties that were voluntarily assumed in the contract and arose out of the intentions of the parties themselves when entering into the agreement. *Hart v Ludwig*, 347 Mich 559, 565-566; 79 NW2d 895 (1956); *Fultz v Union-Commerce Ass'n*, 470 Mich 460, 469-470; 683 NW2d 587 (2004) ("[I]f defendant fails or refuses to perform a promise, the action is in contract."). In contrast, plaintiffs' claim under the PFCSA was predicated on their assertions that City defendants owed them a duty independent of the contract, that is, the statutory duty to maintain their records under MCL 328.218(1). See *Loweke*, 489 Mich at 169 (recognizing that a legal duty, including duties imposed by law, may support a cause of action in tort). And, MCL 328.234 provided plaintiffs with "a right to maintain an action without regard to whether there was a contractual relationship between the plaintiff and the defendant." *Ferrett v Gen Motors Corp*, 438 Mich 235, 245; 475 NW2d 243 (1991). See also MCL 328.234. Plaintiffs' cause of action for City defendants' breach of a legal duty imposed by law under the PFCSA sounded in tort.

Because plaintiffs' cause of action for City defendants' alleged violation of MCL 328.218(1) was premised on a civil wrong independent of the underlying contract, the GTLA will bar plaintiffs' claim "[i]f the action permits an award of damages to a private party as compensation for an injury caused by the noncontractual civil wrong." *In re Bradley Estate*, 494 Mich at 389. See also *Nat'l Copper Co v Minnesota Min Co*, 57 Mich 83, 93; 23 NW 781 (1885) ("[D]amage alone does not give a right of action there must be a concurrence of wrong and damage."). We conclude that plaintiffs sought to impose tort liability under MCL 328.234 of the PFCSA, as the statute permits a private cause of action by any person to force compliance with the Act and authorizes a court to "award damages, issue equitable orders in accordance with the Michigan court rules to restrain conduct in violation of this act, and award reasonable attorney fees and costs to a prevailing party." MCL 328.234. Plaintiffs requested compensatory and punitive relief[7] for

---

[6] MCL 328.234 provides that "[t]he department or any other person, in order to force compliance with this act, may bring an action in a circuit court in any county in which the registrant or any other person has solicited or sold prepaid contracts, whether or not that person has purchased a prepaid contract or is personally aggrieved by a violation of this act. The court may award damages, issue equitable orders in accordance with the Michigan court rules to restrain conduct in violation of this act, and award reasonable attorney fees and costs to a prevailing party."

[7] In their complaint, plaintiffs provided a blanket request for the award of damages in excess of $25,000 for compensatory and punitive damages, costs, and attorney fees. Although plaintiffs also requested specific performance in their complaint, the request was premised on City defendants'

-12-

the damages they allegedly sustained as a result of City defendants' failure to comply with the statutory duty imposed by the Act under MCL 328.218(1). See *In re Bradley Estate*, 494 Mich at 388 (providing that tort damages generally take the form of compensatory damages). Given that the statutory language of MCL 328.234 permits an award of damages to plaintiffs for a noncontractual civil wrong and plaintiffs sought that relief in their complaint, we hold that plaintiffs cause of action sought to impose "tort liability" for purposes of the GTLA. *Id*. at 385 (defining "tort liability" to mean "all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages"); *Eplee*, 327 Mich App at 648. We conclude that the trial court erred in concluding that plaintiffs' allegation that City defendants violated the duties imposed by the PFCSA was a claim for breach of contract because that claim sought to impose tort liability against City defendants. In light of our holding, plaintiffs' claim under the PFCSA is barred by statutory governmental immunity unless plaintiffs pleaded in avoidance of immunity.

## B. AVOIDANCE OF GOVERNMENTAL IMMUNITY

Having concluded that plaintiffs' claim under the PFCSA imposed tort liability for the purposes of the GTLA, the dispositive issue concerns whether plaintiffs pleaded in avoidance of governmental immunity. *Genesee Co Drain Comm'r*, 309 Mich App at 327 (providing that a party pleads in avoidance of governmental immunity by pleading facts that demonstrate that the alleged tort occurred outside the exercise or discharge of a governmental function or by stating a claim that fits within one of the statutory exceptions enumerated under the GTLA).

The trial court found that the City is a governmental agency and that the City's operation of the Cemetery constitutes a governmental function. A governmental agency is defined under MCL 691.1401(a) as "this state or a political subdivision." Subsection (e) defines political subdivision to include "municipal corporation," which is defined in subsection (d) to include a city. MCL 691.1401(e) and (d). Thus, the City, as a municipal corporation, constitutes a governmental agency for purposes of the GTLA.[8] *Mack*, 467 Mich at 204. The trial court found

---

purported breach of the underlying contract, without any mention or reasoning justifying that relief on the basis of City defendants' purported violation of the PFCSA. Specifically, in their request for specific performance, plaintiffs asserted that Margaret had a "contractual right to possession" of the burial plot and requested that the court order defendant to locate two unused plots for Margaret and Nathaniel. Plaintiffs reaffirmed this point in their response to City defendants and C Management's motions for summary disposition by further requesting that the court order specific performance by way of City defendants' fulfillment of "what was bargained for and an equitable remedy for what their mistake caused: plots where Nathaniel Gathright and Margaret Gathright can rest, in peace, together for eternity." Similarly, plaintiffs' request for treble damages in their complaint was unrelated to their claim under the PFCSA. Plaintiffs sought treble damages for City defendants' alleged conversion of the underlying burial plot under MCL 600.2919a, but plaintiffs voluntarily dismissed their conversion claims against City defendants.

[8] Although plaintiffs' complaint named both the City and the Cemetery as defendants, the Cemetery is not a separate legal entity against which a tort action can be directed or from which plaintiffs can recover. *Omelenchuk v Warren*, 466 Mich 524, 526 n 3; 647 NW2d 493 (2002) ("It

-13-

that the City's operation of the Cemetery was a "governmental function" under MCL 691.1401(b) because those responsibilities were mandated or authorized by chapter 12 of the City's ordinances. See MCL 6911401(b) (" 'Governmental function' means an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law."); Benton Harbor Ordinances, § 12-1. Because the parties do not dispute that City defendants were a governmental agency engaged in the exercise or discharge of a governmental function when the alleged torts occurred, City defendants are immune from tort liability unless plaintiffs stated a claim that fits within one of the enumerated statutory exceptions. *Genesee Co Drain Comm'r*, 309 Mich App at 327.

Plaintiffs do not dispute that the enumerated statutory exceptions to governmental immunity do not apply, but instead argue that MCL 328.234 of the PFCSA establishes an exception to the general rule that government agencies are immune from tort liability when performing a governmental function. Although "the Legislature remains free to create additional exceptions, either within the GTLA or another statute[,]" governmental immunity under the Act "may not be held to have been waived or abrogated except that result has been accomplished by an express statutory enactment or by necessary inference from a statute." *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 485; 722 NW2d 906 (2006) (quotation marks and citations omitted). "Whether an express statutory enactment creates an exception to governmental immunity is resolved by reference to the language of the statute." *Id.* MCL 328.234 specifically provides that:

> The department or any other person, in order to force compliance with this act, may bring an action in a circuit court in any county in which the registrant or *any other person has solicited or sold prepaid contracts*, whether or not that person has purchased a prepaid contract or is personally aggrieved by a violation of this act. The court may award damages, issue equitable orders in accordance with the Michigan court rules to restrain conduct in violation of this act, and award reasonable attorney fees and costs to a prevailing party. [Emphasis added.]

The PFCSA defines the word "person" to include a "government agency." MCL 328.215(b). On this basis, plaintiffs allege that the Legislature created an exception to governmental immunity from tort liability in the PFCSA because it included governmental agencies among those "persons" subject to a cause of action for damages.

The plain language of the PFCSA demonstrates the Legislature's intent to waive governmental immunity under the GTLA and submit government agencies to the jurisdiction of the circuit court. The Legislature expressly applied the PFCSA to City defendants by including "governmental agency" in the definition of a "person" that can be sued. MCL 328.234; MCL 328.215(b). City defendants do not dispute that they are a "government agency" for the purposes

---

is agreed that the fire department is not a separate entity from which plaintiffs can recover. Any recovery would be from the city of Warren."); *Davis v Chrysler Corp*, 151 Mich App 463, 466 n 1; 391 NW2d 376 (1986) ("Although plaintiffs' complaint named the Detroit Public Lighting Department as a defendant, the Department is not a separate legal entity against which a tort action can be directed."); and *Michonski v Detroit*, 162 Mich App 485, 490; 413 NW2d 438 (1987).

of the PFCSA but argue that the Legislature did not provide specific and express authorization to sue a governmental entity under the PFCSA. Although the PFCSA does not specifically mention governmental immunity, the Act otherwise imposes duties on a "person," i.e., a government agency, and further permits a private cause of action against the "person" for breaches of the duties imposed by the Act, to which the court may award damages or equitable relief. MCL 328.234. The Legislature's imposition of liability on any "person," which explicitly includes a governmental agency, MCL 328.215(b), for their failure to abide by the provisions of the Act demonstrates an express waiver to governmental immunity provided by the GTLA. Compare: *Ballard v Ypsilanti Twp*, 457 Mich 564, 576; 577 NW2d 890 (1998) (holding that the recreational land use act did not create an express statutory enactment subjecting the state to liability because the Act mentions neither the state nor its political subdivisions), with *Anzaldua v Band*, 457 Mich 530, 551; 578 NW2d 306 (1998) (holding that the Legislature intended to create an exception to immunity in the Whistleblowers' Protection Act by including the state and its political subdivisions in the definition of "employer").

Additional support for this conclusion is found in the legislative history of the GTLA and the later enacted PFCSA. The Legislature enacted MCL 691.1407 of the GTLA in 1964 to provide immunity from tort liability to governmental agencies. 1964 PA 170. Decades later, in 1986, the Legislature enacted the PFCSA, formerly known as the Prepaid Funeral Contracting Funding Act, to govern the sale of funeral cemetery services, "to prescribe powers and duties of the departments of licensing and regulation . . . and certain other state and local officers[,] . . . and to provide certain penalties and remedies[.]" 1986 PA 255. In 2004, the Legislature amended the definition of "person" under MCL 328.215(b) of the PFCSA to include a "government agency" within its meaning, whereas the predecessor statute read, in part, only to include "agency." 2004 PA 21; 1986 PA 255. The Legislature's express inclusion of governmental agencies within the definition of "person" under MCL 328.215(b) was made notwithstanding its knowledge of governmental immunity under the GTLA. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993) ("It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws."). Following the 2004 amendment, any "person," i.e., governmental agency, in violation of the PFCSA was subject to suit in circuit court under MCL 328.234, and, in effect, the historical grant of immunity to governmental agencies under the GTLA was waived.

Accordingly, the trial court did not err by denying City defendants' motion for summary disposition because, despite the PFCSA's imposition of tort liability, the PFCSA's direct inclusion of a "government agency" as a "person" that can be sued for damages indicates the Legislature's intent to waive the immunity conferred by MCL 691.1407(1) for governmental agencies. *Southfield Ed Ass'n*, 320 Mich App at 374.

## VII. DOCKET NO. 362424—C MANAGEMENT

C Management argues that it is entitled to governmental immunity under MCL 691.1407(2) because it was acting as an "agent" of City defendants when the alleged torts occurred, and that the trial court erred by relying on an abrogated principle that considered whether C Management's duties were discretionary or ministerial.

-15-

The trial court found that although C Management was an agent acting under contract of City defendants, the GTLA's grant of immunity did not apply because its duties were ministerial. The GTLA shields the officers, employees, members, or volunteers of a governmental agency from tort liability for injuries or damages they cause while in the course of employment or services, or while acting on behalf of the governmental agency if all of the following conditions are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2)(a) through (c).]

C Management argues that it was entitled to governmental immunity under MCL 691.1407(2) because it was acting as an agent of City defendants when the alleged torts occurred and that agents constitute "employees" for purposes of the GTLA.[9] However, even if C Management was an agent of City defendants, "agents" do not fall under the categories of persons entitled to governmental immunity under MCL 691.1407(2), which lists the individuals entitled to the grant of immunity as officers, employees, members, or volunteers of governmental agencies. Because agents are not listed as an individual entitled to immunity under MCL 691.1407(2), C Management is not entitled to governmental immunity under that statutory provision.

The trial court erroneously relied on *Ross v Consumers Power Co*, 420 Mich at 592, superseded by statute on other grounds as stated in *Ray v Swager*, 501 Mich 52, 81; 903 NW2d 366 (2017), as the *Ross* Court did not construe the statute at issue here. In fact, the Legislature amended the GTLA in response to *Ross*, *Odom v Wayne Co*, 482 Mich 459, 468; 760 NW2d 217 (2006), and MCL 691.1407(2), as amended, applies only to those individual governmental actors listed in the statute.[10]

---

[9] C Management improperly relies on *Pomilee v Detroit*, 121 Mich App 121; 328 NW2d 595 (1982), for the proposition that "agents" are immune from liability under MCL 691.1407(2) by quoting the following language from *Pomilee*: "Officers, agents and employees of immune institutions are themselves cloaked with governmental immunity when acting within the scope of their employment." *Id*. at 125. However, the *Pomilee* Court indicated that the quoted language was a paraphrased statement drawn from *Everhart v Bd of Ed of Roseville Co Sch*, 108 Mich App 218, 222; 310 NW2d 338 (1981). Neither *Pomilee* nor *Everhart* considered what effect, if any, an agency relationship had on governmental immunity under MCL 691.1407(2). In fact, the words "agent" or "agency" do not appear anywhere in the *Everhart* decision.

[10] The trial court ultimately held that governmental immunity under the GTLA did not apply to C Management because its actions while serving as agent were "ministerial" in nature. The court cited *Ross*, which conditioned immunity to government actors on whether they were: "a) acting

-16-

We further reject C Management's contentions that "employee" under MCL 691.1407(2) includes private for-profit corporations serving as agents to a governmental agency. Two reasons support this conclusion. First, as already noted, the Legislature did not include the term "agent" when describing those who are entitled to immunity under MCL 691.1407(2). That term was included, however, within several other provisions of the GTLA,[11] and the inclusion of the term in those sections allows us to presume that the exclusion of the term from MCL 691.1407(2) was intentional. See *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW2d 217 (1931) ("Express mention in a statute of one thing implies the exclusion of other similar things, expressio unius est exclusio alterius.") (citation omitted); *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000) ("The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another."); and *Coblentz v Novi*, 475 Mich 558, 572; 719 NW2d 73 (2006) (providing that "[t]he words chosen by the Legislature are presumed intentional[,] and this Court "will not speculate that it used one word when it meant another").

Second, because "employee" is not defined by the GTLA, it must be given its plain and ordinary meaning, and we may consult a dictionary for guidance. *Rakowski v Sarb*, 269 Mich App 619, 626; 713 NW2d 787 (2006). In *Rakowski*, this Court considered whether the defendant was an employee for purposes of MCL 691.1407(2), and determined that the "*Random House Webster's College Dictionary* (1992) defines 'employee' as 'a person who has been hired to work for another.' " *Id*. at 626. That an "employee" means an individual "person" is consistent with the Legislature's use of that word in subsection 2, which only immunizes certain individual actors, that is, officers, employees, members, or volunteers[12] of a governmental agency, from tort liability, and does not include private entities within the immunity in MCL 691.1407(2). The remaining subsections of MCL 691.1407 are also void of any language evidencing the Legislature's intent for the GTLA's grant of immunity to apply to nongovernmental business entities. C Management is a private for-profit organization that, notwithstanding its purported agency relationship with City

---

during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority; b) acting in good faith; and c) performing discretionary-decisional, as opposed to ministerial-operational, acts." *Ross*, 420 Mich at 592. As C Management argues, the court erred by relying on the abrogated principles outlined in *Ross*, which distinguished discretionary and ministerial acts. The Legislature amended the GTLA in 1986 in response to *Ross*, and the amended statute immunized individual governmental actors "without regard to the discretionary or ministerial nature of the conduct in question." MCL 691.1407(2); *Odom v Wayne Co*, 482 Mich at 468. Thus, except as to intentional torts brought against individuals, the ministerial act consideration is no longer relevant to determining whether an individual is entitled to governmental immunity. *Odom*, 482 Mich at 480. Even still, *Odom* only refers to those individuals designated under the statute—officers and employees—without any inclusion of "agents" being lower-ranking governmental actors under MCL 691.1407(2). *Id*. at 479-480.

[11] The term "agent" is explicitly mentioned in the motor vehicle exception, MCL 691.1405, and the governmental hospital exception, MCL 691.1407(4), under the GTLA.

[12] In fact, the GTLA defines "volunteer" to mean "an *individual* who is specifically designated as a volunteer and who is acting solely on behalf of a governmental agency." MCL 691.1401(i) (emphasis added).

-17-

defendants, retained its separate corporate identity as a nongovernmental actor or entity. C Management is not an "employee" considered by the Legislature as immune from tort liability under MCL 691.1407(2) of the GTLA.[13]

C Management has not cited any relevant authority showing that private for-profit entities such as C Management may be immune from tort liability under MCL 691.1407(2), which cloaks certain *individuals* with governmental immunity. On the other hand, Michigan courts have repeatedly declined to extend the protection of governmental immunity to private entities in application of the related subsections in MCL 691.1407. *Vargo v Sauer*, 457 Mich 49, 68; 576 NW2d 656 (1998) ("[T]he definition of 'governmental agency' does not include, or remotely contemplate, joint ventures, partnerships, arrangements between governmental agencies and private entities, or any other combined state-private endeavors."), (quotation marks and citation omitted); *Jackson v New Ctr Community Mental Health Servs*, 158 Mich App 25, 34; 404 NW2d 688 (1987) ("A private entity's performance of a governmental function does not confer governmental agency status on that entity"); and *Roberts v Pontiac*, 176 Mich App 572, 578; 440 NW2d 55 (1989) (holding that there is "no reason to extend the protection of governmental immunity to a private entity merely because it contracts with the government"). Michigan courts have even held that the employees of a private entity doing business with a public agency also are not entitled to governmental immunity. See *Rambus v Wayne Co Gen Hosp*, 193 Mich App 268, 270-273; 483 NW2d 455 (1992); *Roberts*, 176 Mich App at 578; and *Vargo v Sauer*, 457 Mich at 71 ("[O]ur examination of the governmental tort immunity statute reveals that although the Legislature extended immunity to a large number of individuals for broad categories of conduct, there is no indication that the statute, when read in conjunction with its definitional sources, even remotely contemplates a grant of immunity for agents who are simultaneously serving a private entity.")

We conclude that the trial court properly denied summary disposition to C Management on governmental immunity grounds, albeit for the wrong reasons. However, a trial court's ruling will be undisturbed on appeal where the right result was reached, but for the wrong reason. *Southfield Ed Ass'n*, 320 Mich App at 374 (citation omitted). Because C Management was not entitled to tort immunity under the GTLA, we need not discuss its remaining issues on appeal.

---

[13] C Management argues for the first time on appeal that under the economic-realities test, see *Rakowski*, 269 Mich App at 625, it qualified as an "employee" for purposes of MCL 691.1407(2). However, because C Management raised this argument for the first time on appeal, it is not properly preserved. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005) (holding that an issue is generally preserved for review if it was raised before, addressed, or decided by the trial court). In any event, our reading of MCL 691.1407(2) renders the argument moot.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola